# United States Court of Appeals for the Federal Circuit

---

**TRIMBLE INC., INNOVATIVE SOFTWARE ENGINEERING, LLC,**
*Plaintiffs-Appellants*

**v.**

**PERDIEMCO LLC,**
*Defendant-Appellee*

---

2019-2164

---

Appeal from the United States District Court for the Northern District of California in No. 4:19-cv-00526-JSW, Judge Jeffrey S. White.

---

Decided: May 12, 2021

---

DAN L. BAGATELL, Perkins Coie LLP, Hanover, NH, argued for plaintiffs-appellants. Also represented by DANIEL TYLER KEESE, Portland, OR; AMANDA TESSAR, Denver, CO.

LAURENCE M. SANDELL, Mei & Mark LLP, Washington, DC, argued for defendant-appellee. Also represented by LEI MEI, EDWARD NAIDICH; PATRICK JOSEPH COYNE, Finnegan, Henderson, Farabow, Garrett & Dunner LLP, Washington, DC; JENCY J. MATHEW, Reston, VA; ROBERT F. MCCAULEY, Palo Alto, CA.

CHARLES DUAN, R Street Institute, Washington, DC, for amici curiae Electronic Frontier Foundation, Engine Advocacy, Innovation Defense Foundation, Public Knowledge, R Street Institute.

―――――――――

Before NEWMAN, DYK, and HUGHES, *Circuit Judges*.

DYK, *Circuit Judge*.

Trimble Inc. and Innovative Software Engineering, LLC ("ISE") appeal a judgment dismissing their declaratory judgment noninfringement action against PerDiemCo LLC for lack of personal jurisdiction. PerDiemCo is the owner of eleven patents that it accused Trimble and ISE of infringing in letters and other communications sent to Trimble, a California resident. Relying on this court's decision in *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998), the United States District Court for the Northern District of California held that it would be unreasonable to assert personal jurisdiction over PerDiemCo based on its communications to Trimble in California.

We conclude that *Red Wing* does not preclude personal jurisdiction on the facts of this case and that the district court had personal jurisdiction over PerDiemCo.

BACKGROUND

Defendant PerDiemCo is a Texas limited liability company. PerDiemCo is the assignee of the eleven patents at issue in this lawsuit. All the patents have a common specification and relate to electronic logging devices and/or geofencing.[1] Electronic logging devices log the hours and

―――――――――

[1] Of the eleven patents involved here, PerDiemCo asserts that six relate to electronic logging devices and

activities of truck and other commercial vehicle drivers to help their employers comply with federal and state safety regulations. Geofencing involves monitoring whether a vehicle enters or leaves a preset area. PerDiemCo's current sole owner, officer, and employee is Robert Babayi. He lives and works in Washington, D.C. PerDiemCo rents office space in Marshall, Texas. Mr. Babayi has never visited the rented space, and PerDiemCo has no employees in Marshall.

Plaintiffs Trimble and ISE, Trimble's wholly owned subsidiary, manufacture and sell positioning and navigation products and services that rely on the Global Positioning System. As part of their offerings, Trimble and ISE supply electronic logging devices and related services. Trimble also sells geofencing products. Trimble is incorporated in Delaware and is headquartered in Sunnyvale, California, which is located in the Northern District of California. ISE is an Iowa limited liability company with its headquarters and principal place of business in Coralville, Iowa.

In October 2018, Mr. Babayi, on behalf of PerDiemCo, sent a letter to ISE in Iowa accusing ISE's products and services of using technology covered by at least PerDiemCo's electronic-logging-device patents. The letter also explained that PerDiemCo "actively licenc[es]" its patents and listed at least ten companies that had entered into

geofencing: (1) U.S. Patent No. 8,149,113; (2) U.S. Patent No. 9,485,314; (3) U.S. Patent No. 9,621,661; (4) U.S. Patent No. 9,680,941; (5) U.S. Patent No. 9,871,874; and (6) U.S. Patent No. 10,021,198. PerDiemCo asserts that the other five relate solely to electronic logging devices: (1) U.S. Patent No. 9,319,471; (2) U.S. Patent No. 9,954,961; (3) U.S. Patent No. 10,104,189; (4) U.S. Patent No. 10,148,774; and (5) U.S. Patent No. 10,171,950.

nonexclusive licenses after the companies had "collectively spent tens of millions of dollars in litigation expenses." J.A. 1273–74.  Attached to PerDiemCo's letter was an unfiled complaint for the Northern District of Iowa, which asserted nine of PerDiemCo's patents against ISE's products and services, and a claim chart that provided further detail regarding the alleged infringement.  The letter also offered ISE a nonexclusive license to PerDiemCo's patents, proposed that the parties engage in negotiations, and attached a draft nondisclosure agreement to facilitate the parties' discussions.

ISE forwarded the letter to Trimble's Chief IP Counsel, Aaron Brodsky, in Westminster, Colorado.  In his response to PerDiemCo, Mr. Brodsky explained that Trimble would be PerDiemCo's point of contact for resolution of the matter.  Mr. Babayi replied, explaining that PerDiemCo also believed that Trimble's products, in addition to ISE's products, infringed its patents and attached a claim chart purporting to substantiate the infringement allegations.  After the parties communicated by telephone, PerDiemCo emailed Trimble, confirming PerDiemCo's offers to enter binding mediation to attempt to reach a settlement.

Mr. Brodsky responded by noting that Trimble was willing to negotiate as long as the talks continued to be productive.  In later communications, PerDiemCo asserted new allegations against Trimble's products, explaining that the products infringed a recently issued patent and a patent that was due to issue soon, both of which relate to electronic logging devices, bringing the total number of asserted patents to eleven.  Later, PerDiemCo alleged that Trimble's geofencing products infringe claims of six of the eleven already asserted patents that, according to PerDiemCo, also relate to geofencing.

The parties continued to negotiate through December 2018.  Throughout these negotiations, PerDiemCo

communicated with Trimble via letter, email, or telephone at least twenty-two times. In correspondence and telephone calls, PerDiemCo threatened to sue Trimble for patent infringement in the Eastern District of Texas and identified counsel that it had retained for this purpose.

On January 29, 2019, Trimble and ISE filed a complaint in the Northern District of California, where Trimble is headquartered, seeking a declaratory judgment that neither Trimble nor ISE infringed any of the patents that PerDiemCo asserted. Trimble and ISE did not claim that PerDiemCo was subject to the jurisdiction of the Northern District of California under general personal jurisdiction. Instead, they argued that PerDiemCo was subject to the court's jurisdiction under a specific jurisdiction theory. PerDiemCo moved to dismiss on the ground that the district court lacked personal jurisdiction under *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998), which stated that "[a] patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement" because "[g]rounding personal jurisdiction on such contacts alone would not comport with principles of fairness," *id.* at 1361.

The district court held that it lacked specific personal jurisdiction over PerDiemCo. The court concluded that Trimble had established the requisite minimum contacts because "PerDiemCo's cease-and-desist letters and subsequent communications were purposefully directed at Trimble, a California resident,"[2] and Trimble's declaratory

---

[2]    The court held that PerDiemCo's communications with Mr. Brodsky in Colorado were, for personal jurisdictional purposes, directed to Trimble in California, rather than in Colorado. This focus is consistent with our cases.

judgment claim "'arises out of or relates to' PerDiemCo's activities." J.A. 9–10. But applying *Red Wing*, the court held that "exercising specific personal jurisdiction over PerDiemCo would be constitutionally unreasonable." *Id.* at 10.

Trimble and ISE appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

The sole issue in this case is whether the district court erred in holding that there is not specific personal jurisdiction over PerDiemCo in the Northern District of California. "[W]e apply Federal Circuit law because the jurisdictional issue is 'intimately involved with the substance of the patent laws.'" *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (quoting *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008)). Because the parties do not dispute the jurisdictional facts, we review the question of personal jurisdiction de novo. *See Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017).

## I

"Determining whether jurisdiction exists over an out-of-state defendant involves two inquires: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due

---

*Maxchief Investments Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1139 (Fed. Cir. 2018) (holding that, for personal jurisdiction purposes, a letter sent to a company's counsel is directed to the company at its headquarters, not the location of counsel); *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (same); *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995) (same).

process." *Autogenomics*, 566 F.3d at 1017 (quoting *Genetic Implant Sys. Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)).  California, where Trimble filed suit, permits service of process to the limits of the Due Process Clauses of the U.S. Constitution.  *Xilinx*, 848 F.3d at 1353; *see also* Cal. Civ. Proc. Code § 410.10 (West 2020).  Thus, the two inquiries fold into one:  whether the exercise of jurisdiction over PerDiemCo would be consistent with due process.  In evaluating the exercise of jurisdiction, the Supreme Court "has long focused on the nature and extent of 'the defendant's relationship to the forum State.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1779 (2017)).

"[A] tribunal's authority [to exercise personal jurisdiction over a defendant] depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)).  "The contacts needed for [specific] jurisdiction often go by the name 'purposeful availment.'" *Id.*  For specific jurisdiction, "[t]he defendant . . . must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The contacts "must show that the defendant deliberately 'reached out beyond' its home." *Id.* at 1025.  The exercise of specific personal jurisdiction, however, is limited:  "[t]he plaintiff's claims . . . 'must arise out of or relate to the defendant's contacts' with the forum." *Id.* (quoting *Bristol-Myers*, 137 S. Ct. at 1780).

Apart from purposeful availment, the exercise of personal jurisdiction must also comport with "fair play and substantial justice." *Id.* at 1024 (quoting *Int'l Shoe*, 326 U.S. at 316–17).  In *Burger King Corp. v. Rudzewicz*, 471

U.S. 462 (1985), and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), the Supreme Court identified five such considerations, which are relevant to whether the exercise of jurisdiction would comport with fair play and substantial justice:

> [C]ourts in "appropriate case[s]" may evaluate [1] "the burden on the defendant," [2] "the forum State's interest in adjudicating the dispute," [3] "the plaintiff's interest in obtaining convenient and effective relief," [4] "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and [5] the "shared interest of the several States in furthering fundamental substantive social policies."

*Burger King*, 471 U.S. at 477 (second alternation in original) (quoting *World-Wide Volkswagen*, 444 U.S. at 292). In *Burger King*, the Court explained that these considerations sometimes make it easier to find personal jurisdiction because they "serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* (citations omitted). "On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477 (emphasis added).

## II

On appeal, PerDiemCo argues that the district court was correct in holding that *Red Wing* controls because *Red Wing* held that the sending of demand letters in that case did not create personal jurisdiction.

## A

In *Red Wing*, Hockerson-Halberstadt, Inc. ("HHI"), a Louisiana corporation with its principal place of business

in New Mexico, sent a letter to Red Wing Shoe Co., a Minnesota corporation with its principal place of business in Minnesota, suggesting that several of Red Wing's products infringed HHI's patent. *Id.* at 1357. The letter also offered Red Wing Shoe a nonexclusive license. *Id.* Red Wing responded and requested an extension of time to consider HHI's letter. *Id.* Two weeks later, HHI sent a second letter granting the requested extension of time and asserted that, based on HHI's review of Red Wing's catalog, additional products also infringed HHI's patent. *Id.* Red Wing responded to HHI's allegations of infringement, concluding that none of its products infringed HHI's patent. *Id.* A month later, HHI sent a third letter, rebutting Red Wing's noninfringement analysis and again offering to negotiate a nonexclusive license. *Id.* In its reply, Red Wing again denied infringement and stated that it did not have an interest in license negotiations. *Id.* A week later, Red Wing filed a declaratory judgment action against HHI in the District of Minnesota, where Red Wing was located. *Id.*

Given these facts, we reasoned that "[a] patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement" and concluded that "[g]rounding personal jurisdiction on such contacts alone would not comport with principles of fairness." 148 F.3d at 1361. We explained that a cease-and-desist letter that included an offer for a license was "more closely akin to an offer for settlement of a disputed claim rather than an arms-length negotiation in anticipation of a long-term continuing business relationship." *Id.* And we viewed "[t]he policy favoring settlement" as "squarely invok[ing] one of the considerations enumerated by the Supreme Court for . . . a proper Due Process analysis, namely, 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies.'" *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 292). We determined that "[p]rinciples of fair play and

substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Id.* at 1360–61.

Three subsequent developments have clarified the scope of *Red Wing*.

First, the Supreme Court cases following *Red Wing* have made clear that the analysis of personal jurisdiction cannot rest on special patent policies. To the extent that *Red Wing* and other cases have suggested otherwise, that language is not consistent with these Supreme Court cases. In cases after *Red Wing*, the Court has emphasized that "[p]atent law is governed by the same . . . procedural rules as other areas of civil litigation." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 964 (2017) (alteration in original). And the Court has repeatedly rejected special rules for patent litigation in the context of rules governing civil litigation generally. For instance, the Supreme Court rejected this court's "'general rule,' unique to patent disputes, 'that a permanent injunction will issue once infringement and validity have been adjudged,'" emphasizing instead that a court's decision to grant injunctive relief "must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393–94 (2006). Personal jurisdiction is not an area in which Congress has enacted a patent-specific statute that "placed patent infringement cases in a class by themselves." *TC Heartland LLC v. Kraft Foods Grp.*, 137 S. Ct. 1514, 1518 (2017) (quoting *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 713 (1972)). Supreme Court precedent assures that *Red Wing* cannot rest on special considerations unique to patent cases.

Second, the Supreme Court has held that communications sent into a state may create specific personal

jurisdiction, depending on the nature and scope of such communications. In *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018), the Supreme Court explained that "[i]t is settled law that a business need not have a physical presence in a State to satisfy the demands of due process." *Id.* at 2093 (citing *Burger King*, 471 U.S. at 476, and then discussing *Quill Corp. v. North Dakota*, 504 U.S. 298, 308 (1992)). An entity that repeatedly sends communications into a forum state "clearly has 'fair warning that [its] activity may subject [it] to the jurisdiction of a foreign sovereign.'" *Quill*, 504 U.S. at 308 (alterations in original) (citation omitted). And we have explained, "[b]ased on the clear principles set out in Supreme Court jurisprudence," a defendant's "negotiation efforts, although accomplished through telephone and mail" from outside the forum, "can still be considered as activities 'purposefully directed' at residents of [the forum]." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1362 (Fed. Cir. 2001) (discussing *Quill* and applying its reasoning).

Our more recent cases have concluded that, in the context of patent litigation, communications threatening suit or proposing settlement or patent licenses can be sufficient to establish personal jurisdiction. For example, in *Jack Henry & Associates, Inc. v. Plano Encryption Technologies LLC*, 910 F.3d 1199 (Fed. Cir. 2018), we held that the exercise of personal jurisdiction over a defendant was reasonable after the defendant sent communications to eleven banks located in the forum "identifying . . . patents, stating that the Banks [were] believed to be infringing the patents, and inviting non-exclusive licenses." *Id.* at 1201, 1206. We rejected "the proposition that patent enforcement letters can never provide the basis for jurisdiction in a declaratory judgment action," explaining that *Red Wing* and its progeny "did not create such a rule." *Id.* at 1206. We reaffirmed this view of *Red Wing* and its progeny in *Genetic Veterinary*

*Sciences, Inc. v. LABOKLIN, GmbH & Co. KG*, 933 F.3d 1302, 1312 (Fed. Cir. 2019).

In similar cases, our sister circuits have agreed that communications from outside the forum can form the basis of personal jurisdiction. *See, e.g.*, *Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) (en banc) (explaining that a cease-and-desist letter could be the basis for personal jurisdiction); *Oriental Trading Co. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001) (finding personal jurisdiction after defendants "purposely direct[ed] their fraudulent communications at residents of Nebraska").

Beyond the sending of communications into a forum, we have identified other contacts relevant to the purposeful availment inquiry in declaratory judgment patent cases. These contacts include hiring an attorney or patent agent in the forum state to prosecute a patent application that leads to the asserted patent, *see Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351 (Fed. Cir. 2003); physically entering the forum to demonstrate the technology underlying the patent to the eventual plaintiff, *id.*, or to discuss infringement contentions with the eventual plaintiff, *Xilinx*, 848 F.3d at 1357; the presence of "an exclusive licensee . . . doing business in the forum state," *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366–67 (Fed. Cir. 2006); and "extra-judicial patent enforcement" targeting business activities in the forum state, *Campbell Pet Co. v. Miale*, 542 F.3d 879, 886 (Fed. Cir. 2008), among others.

Third, the Supreme Court's recent decision in *Ford* has established that a broad set of a defendant's contacts with a forum are relevant to the minimum contacts analysis. There, the Court emphasized that a defendant's contacts "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market'

in the forum State or entering a contractual relationship centered there." *Ford*, 141 S. Ct. at 1025 (alteration in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). At issue was whether the courts of Montana and Minnesota could exercise personal jurisdiction over Ford for accidents involving two Ford vehicles that took place in the states despite the two vehicles not having been sold in either state.

Rather than focus on the contacts related to the specific vehicles, the Court focused on the broader efforts by Ford to sell similar vehicles in each state. The Court concluded that Ford's "veritable truckload of contacts" with the two states—while not directly related to the underlying suit—were still "relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit," and the Court emphasized that "relevance is a key part" of the minimum contacts inquiry. *Id.* at 1031–32. The "link" or "connection" between the contacts and the suit required for a court to exercise jurisdiction simply "demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum,'" *id.* at 1026, such that "there is a strong 'relationship among the defendant, the forum, and the litigation'— the 'essential foundation' of specific jurisdiction," *id.* at 1028.

In light of *Ford*, just as sales of similar vehicles and the presence of dealerships in a forum can support personal jurisdiction in the tort context, so too can nonexclusive patent licenses in this case.

Given these developments and consistent with the Supreme Court's instruction to treat "isolated or sporadic [contacts] differently from continuous ones," *Ford*, 141 S. Ct. at 1028 n.4, *Red Wing* remains correctly decided with respect to the limited number of communications involved in that case. However, there is no general rule that demand letters can never create specific personal

jurisdiction.  As we stated in *Jack Henry*, *Red Wing* "did not create such a rule" because that rule "would contradict the Court's directive to 'consider a variety of interests' in assessing whether jurisdiction would be fair."  910 F.3d at 1206 (quoting *Bristol-Myers*, 137 S. Ct. at 1780).  The central question under *Red Wing* is now whether a defendant's connection to a forum is sufficient to satisfy the minimum contacts or purposeful availment test and, as discussed in Section II.C below, whether the exercise of jurisdiction conforms to the due process and fairness criteria of precedent.

## B

We conclude that the minimum contacts or purposeful availment test is satisfied in this case.  PerDiemCo's contacts with California are far more extensive than those in *Red Wing*.  PerDiemCo exchanged twenty-two communications with Trimble in California over a period of three months, some through its subsidiary ISE in Iowa and others through its Chief IP Counsel in Colorado.  The first of these communications was a letter (sent to ISE in Iowa) that had attached an unfiled complaint and was used by PerDiemCo to launch negotiations for a nonexclusive license with Trimble and ISE.  This unfiled complaint asserted nine of PerDiemCo's patents against ISE's products and services.  The letter also identified around ten nonexclusive licensees of the same set of PerDiemCo's patents that PerDiemCo accused Trimble's and ISE's products and services of infringing.  After ISE brought Trimble, its parent, into the discussion, PerDiemCo then accused Trimble's products of infringing eleven of PerDiemCo's patents.  PerDiemCo next sought to enter into binding mediation in an attempt to reach a settlement on its infringement allegations.  As the parties continued to negotiate, PerDiemCo asserted additional patent claims against more of Trimble's products.  By the end of the negotiations, PerDiemCo additionally threatened to sue Trimble in the Eastern

District of Texas and identified the counsel it planned to use for this purpose.

As its actions make clear, PerDiemCo repeatedly contacted Trimble and ISE in California, accumulating an extensive number of contacts with the forum in a short period of time. Unlike *Red Wing*, PerDiemCo's actions went far beyond "solely . . . informing a party who happens to be located [in California] of suspected infringement." 148 F.3d at 1361. Rather, PerDiemCo amplified its threats of infringement as the communications continued, asserting more patents and accusing more of Trimble and ISE's products of infringement. Indeed, PerDiemCo went so far as to identify the counsel it retained to sue Trimble and ISE and the venue in which it planned to file suit. PerDiemCo's twenty-two communications over the course of about three months fall well outside the "sufficient latitude" we sought to grant patentees "to inform others of [their] patent rights without subjecting [themselves] to jurisdiction in a foreign forum" on the basis of three letters sent over a similar time period in *Red Wing*. *Id.* at 1361–62. PerDiemCo's attempts to extract a license in this case are much more akin to "an arms-length negotiation in anticipation of a long-term continuing business relationship," over which a district court may exercise jurisdiction. *Id.* at 1361 (citing *Burger King*, 471 U.S. at 479). So too PerDiemCo had negotiated some ten other nonexclusive licenses, including several with large firms operating nationwide. And Trimble is headquartered in California, connecting California to Trimble's claims, which is a consideration the Court in *Ford* found relevant in distinguishing its earlier decision in *Bristol-Myers*. *See* 141 S. Ct. at 1031.

Trimble and ISE's noninfringement declaratory judgment action relates to PerDiemCo's contacts with California. As a result, the minimum contacts or purposeful availment requirement is easily satisfied in this case.

## C

PerDiemCo urges that the district court's assertion of jurisdiction would still be unreasonable. PerDiemCo relies on the five factors from *Burger King* and *World-Wide Volkswagen* relating to the question whether the exercise of personal jurisdiction would comport with fair play and substantial justice. The district court made no such determination and with good reason: an examination of each of these factors shows that the exercise of personal jurisdiction here would not be unreasonable.

*(1) The burden on the defendant.* When evaluating whether the exercise of personal jurisdiction would comport with fair play and substantial justice, the Court has explained that the "primary concern" is assessing "the burden on the defendant." *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *World-Wide Volkswagen*, 444 U.S. at 292). Relying primarily on the burden of litigating in the Northern District of California, PerDiemCo argues that it is "a small company with limited resources" and that "travel to California for hearings, depositions, and trial would more than double PerDiemCo's travel and legal expenses." Appellee's Br. 44–45. It further claims that "litigating in Texas (or Iowa) would impose a more modest burden on PerDiemCo than litigating in California." *Id.* at 46. Litigating in the Northern District of California does not impose an undue burden on PerDiemCo. While PerDiemCo claims to have offices in the Eastern District of Texas, Mr. Babayi, PerDiemCo's sole employee, has never visited that office and his office is in Washington, D.C. The district court found that PerDiemCo's presence in Texas was "pretextual" and "amount[ed] to little more than a façade." J.A. 11. PerDiemCo has repeatedly filed lawsuits in the Eastern District of Texas, which is far from Mr. Babayi's office in Washington, D.C. PerDiemCo also threatened to sue ISE in the Northern District of Iowa—similarly far from Mr. Babayi's Washington office. As Trimble and ISE demonstrated,

PerDiemCo's burden of litigating in California is, at most, only slightly greater than litigating in its preferred fora of Texas or Iowa. Further, the nature of PerDiemCo's primary business of asserting its patents requires it to litigate far from Mr. Babayi's Washington office, thus mitigating any burden on it as the defendant. *See Xilinx*, 848 F.3d at 1357 ("By the very nature of its business [as a non-practicing patent holder], Papst must litigate its patents in the United States in fora far from its office. In this context the burden on Papst to litigate in California appears not undue.").

The Supreme Court also has noted that the type of inconvenience that PerDiemCo emphasizes "usually may be accommodated through means short of finding jurisdiction unconstitutional," such as "seek[ing] a change of venue." *Burger King*, 471 U.S. at 477. PerDiemCo sought a change of venue in the district court, which the district court denied, and PerDiemCo has abandoned its cross-appeal of that issue here.

*(2) The forum state's interest in adjudicating the dispute.* The Northern District of California has a significant interest in adjudicating this dispute. Trimble resides in the Northern District of California. As a result, "California has 'definite and well-defined interests in commerce and scientific development,' and 'California has a substantial interest in protecting its residents from unwarranted claims of patent infringement.'" *Xilinx*, 848 F.3d at 1356 (first quoting *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 430 (Fed. Cir. 1996); then quoting *Elecs. for Imaging*, 340 F.3d at 1352). Because it is headquartered there, this is not a case in which Trimble is a plaintiff that is engaged in forum shopping. *See Ford*, 141 S. Ct. at 1031 (discussing *Bristol-Myers* and emphasizing that the plaintiffs in that case "were engaged in forum-shopping—suing in California because it was thought plaintiff-friendly, even though their cases had no tie to the State").

*(3) The plaintiffs' interest in obtaining convenient and effective relief.* Trimble, a California resident, "indisputably has an interest in protecting itself from patent infringement by obtaining relief 'from a nearby federal court' in its home forum." *Xilinx*, 848 F.3d at 1356 (quoting *Breckenridge*, 444 F.3d at 1367–68). And as Trimble emphasizes, California is where its most relevant employees and documents are located.

*(4) The interstate judicial system's interest in obtaining the most efficient resolution of controversies.* The interstate judicial system's interest in obtaining the most efficient resolution of controversies also does not counsel against jurisdiction. Jurisdiction over Trimble and ISE's claims in California would result in an efficient resolution of the controversy. Even assuming that PerDiemCo's assertion that the most efficient resolution of a controversy is settlement is correct, there is nothing preventing the parties from reaching a settlement while this case is pending in the Northern District of California.

*(5) The shared interest of the several states in furthering fundamental substantive social policies.* And with respect to the states' shared interest in furthering fundamental substantive social policies, "there does not appear to be any conflict between the interests of California and any other state, because 'the same body of federal patent law would govern the patent [non]infringement claim irrespective of the forum.'" *Xilinx*, 848 F.3d at 1356.

PerDiemCo thus has not made "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

CONCLUSION

For the foregoing reasons, we reverse the district court's order finding a lack of personal jurisdiction and remand for further proceedings.

## REVERSED AND REMANDED

Costs

No costs.