**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10293

_____

FRIDA KAHLO CORPORATION,
FRIDA KAHLO INVESTMENTS, S.A.,

*Plaintiffs-Appellants*,

*versus*

MARA CRISTINA TERESA ROMEO PINEDO,
  an individual,
FAMILIA KAHLO S.A. DE C.V.,
  a Mexico corporation,

*Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-22399-DPG

_____

Before LUCK, LAGOA, and ABUDU, Circuit Judges.

LAGOA, Circuit Judge:

This appeal arises out of a dispute over the trademarks of the late, well-known Mexican artist Frida Kahlo and whether the district court had personal jurisdiction over Defendants Familia Kahlo S.A. de C.V. ("Familia Kahlo") and Mara Cristina Teresa Romeo Pinedo. Three years ago, Plaintiffs Frida Kahlo Corporation ("FKC") and Frida Kahlo Investments, S.A. brought a lawsuit claiming Defendants had violated Florida tort law and the Lanham Act by sending threatening and false cease-and-desist letters to Plaintiffs' business partners in Florida to stop the use of Frida Kahlo trademarks. The district court dismissed the lawsuit, finding that it lacked personal jurisdiction over Pinedo because of Florida's corporate shield doctrine, and that it lacked personal jurisdiction over both Defendants because the minimum contacts test was not satisfied. Plaintiffs appealed.

After careful review, and with the benefit of oral argument, we reverse the district court's decision. We hold that the corporate shield doctrine does not apply to Pinedo, because the cease-and-desist letters state that they were sent on behalf of Pinedo in her personal capacity. We also hold that the Due Process Clause does not bar personal jurisdiction over Familia Kahlo or Pinedo. This is because the effects test is easily satisfied in this case and because, contrary to the district court's decision, a tortious cease-and-desist letter can satisfy the minimum contacts test.

## I.    FACTUAL & PROCEDURAL BACKGROUND

Magdalena Carmen Frida Kahlo y Calderon, the Mexican artist known as Frida Kahlo, died in 1954.  Pinedo is Kahlo's grand-niece and is a citizen and resident of Mexico.  Familia Kahlo is a Mexican corporation, of which Pinedo is an owner and former officer.  Pinedo travels throughout the United States to promote Frida Kahlo at exhibits and events, representing herself and Familia Kahlo.

After Frida Kahlo's death, certain rights to her intellectual property were passed to her niece, Isolda Pinedo Kahlo, and Pinedo.  In 2004, FKC, a Panamanian corporation with its principal place of business in Florida, was formed to educate, share, and preserve the art, image, and legacy of Frida Kahlo through the commercialization and licensing of the "Frida Kahlo" brand.  In 2005, Isolda Pinedo Kahlo, Pinedo, and Familia Kahlo entered into an agreement assigning FKC the rights to the Frida Kahlo name, likeness, brand, and marks (the "2005 Agreement").  The individual trademarks were assigned to FKC in separate agreements.

FKC claims it owns hundreds of trademarks, including the six trademarks at issue here and several copyrighted works (the "FKC Trademarks").  FKC also claims common law rights in various marks in the United States through substantial and continuous use in commerce.  In 2008, Frida Kahlo Investments, S.A., a Panamanian corporation with an office in Florida, was formed to help manage FKC's trademarks.

At some point, the parties to the 2005 Agreement began disputing FKC's ownership of the assigned intellectual property rights, resulting in litigation in several countries, including Panama and Spain. Plaintiffs allege that, as early as 2017, Defendants attacked Plaintiffs' intellectual property rights in the United States by sending cease-and-desist letters to Plaintiffs' licensees in different states. Plaintiffs assert that Defendants' efforts first reached into Florida on January 19, 2021, when they sent a cease-and-desist letter to CIC Media TV in Miami, Florida, requesting that it not violate Defendants' intellectual property rights.

Around 2022, Plaintiffs contracted with Primo Entertainment LLC, a Florida limited liability company, and Garber IMC as licensees to cobrand, promote, and publish walk-through exhibitions titled "Frida Kahlo – The Life of an Icon." The exhibitions explore Frida Kahlo's life using collections of historical photographs, original films, digital environments, artistic installations, collector's items, and music. The exhibitions were scheduled for seven cities across the United States, including Miami, Florida. Plaintiffs also contracted with OEG Latino to have Casely, Inc., a licensee and maker of phone covers, sell Frida Kahlo branded phone covers at the exhibitions.

On July 22, 2022, Defendants, through Familia Kahlo's General Manager, Alfonso Durán, sent cease-and-desist letters to Primo, OEG, and Garber IMC requesting that they refrain from participating in any business initiative involving the use of the name or image of Frida Kahlo. On July 25, 2022, Defendants sent

a similar cease-and-desist letter to Casely.  Defendants' cease-and-desist letters identified Familia Kahlo as the representative of Pinedo in her capacity as the heiress of Frida Kahlo.  The letters informed the licensees of pending lawsuits in Panama and Spain and requested that they "refrain from participating, directly or indirectly, in any business initiative that involves the use of the name or image of the painter Frida Kahlo."  Otherwise, the letter stated, "we will hold you jointly and severally liable for any damages."  Defendants' letters did not identify any trademark or copyright registrations or otherwise identify their intellectual property rights.

Because Plaintiffs obtained copyright licenses for the images of Frida Kahlo in the Exhibitions, Plaintiffs contend that Defendants do not have any rights of publicity related to Frida Kahlo's name or likeness in the United States.  Indeed, Plaintiffs assert that Defendants have never enforced or defended any trademark rights in the name Frida Kahlo.  Plaintiffs claim that they are incurring damages because Defendants continue to intimidate Plaintiffs' licensees in various states, including Florida.

Defendants assert that this is Plaintiffs' second attempt to adjudicate a matter in the United States that should be adjudicated in Mexico City.  Defendants argue that the district court lacked subject matter jurisdiction because the assignments contain a mandatory forum selection clause stating that disputes relating to the 2005 Agreement and assignments can be conducted only in Mexico City.  Plaintiffs, however, claim that the FKC Trademarks are outside the scope of the 2005 Agreement and assignments.

On July 29, 2022, Plaintiffs filed this action against Defendants for copyright infringement, tortious interference with advantageous business relationships, and declaratory relief under 28 U.S.C. § 2201.  Later, Plaintiffs dropped their copyright infringement claim.  Defendants moved to dismiss the action for lack of subject matter jurisdiction as to the tortious interference claim and for lack of personal jurisdiction as to both claims.

The district court granted Defendants' motion to dismiss. The district court first determined that, while Familia Kahlo was subject to Florida's long-arm statute, Pinedo was protected by the corporate shield doctrine because Pinedo did not send the letters in her personal capacity and did not benefit from the action.  The district court then concluded that due process prevented the exercise of personal jurisdiction over both Defendants, stating: "[S]ending an infringement letter, without more, is insufficient to satisfy the requirements of due process …. Aside from sending the letters, Defendants did not confront Plaintiffs' licensees in Florida, visit Plaintiffs' office in Florida to negotiate trademarks, or engage in any other activities that establish sufficient minimum contacts." Additionally, the district court determined that, "[e]ven if Rule 4(k)(2) [of the Federal Rules of Civil Procedure] applied to Pinedo, exercising jurisdiction over her would offend due process because Pinedo's limited and sporadic trips to the United States on behalf of Familia Kahlo do not establish sufficient contacts with the United States 'as a whole.'"  Plaintiffs appealed.

## II.    STANDARD OF REVIEW

"We review de novo [a] dismissal for lack of personal jurisdiction, accepting the allegations in the complaint as true. When a defendant submits an affidavit contesting the basis for personal jurisdiction, the burden shifts back to the plaintiff to produce evidence to support personal jurisdiction. Where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1222 (11th Cir. 2023) (cleaned up). "If the district court makes any findings of fact in reaching its personal jurisdiction conclusion, we review those fact findings for clear error." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). *See also N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 132–34 (11th Cir. 2025).

## III.    ANALYSIS

To decide this case, we must consider two questions: (1) whether Florida's long-arm statute provides personal jurisdiction over Pinedo, and (2) even if Pinedo and Familia Kahlo are subject to personal jurisdiction under the long-arm statute, whether exercising that jurisdiction over Defendants comports with the Due Process Clause. *See Louis Vuitton*, 736 F.3d at 1350. We address each issue in turn.

### A. Whether Florida's long-arm statute provides personal jurisdiction over Pinedo?

Plaintiffs assert that specific personal jurisdiction over Defendants exists pursuant to § 48.193(1)(a)(2) of Florida's long-arm

statute, which concerns non-resident defendants "who personally or through an agent" "[c]ommit[] a tortious act within" Florida and a cause of action "aris[es] from" that tortious act. The reach of Florida's long-arm statute is a question of Florida law, and we are bound by the decisions of the Florida Supreme Court when interpreting and applying the statute. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166–67 (11th Cir. 2005). "We are also bound to adhere to the interpretations of Florida's long-arm statute offered by Florida's District Courts of Appeal absent some indication that the Florida Supreme Court would hold otherwise." *Louis Vuitton*, 736 F.3d at 1352.

The district court concluded that Plaintiffs' jurisdictional allegations relating to Familia Kahlo satisfied § 48.193(1)(a)(2) but that Florida's corporate shield doctrine prevented the exercise of personal jurisdiction over Pinedo. Plaintiffs contend that the district court erred because Pinedo acted in her personal capacity in committing the alleged intentional torts. We agree.

"[T]he corporate shield doctrine creates a 'distinction between a corporate officer acting on one's own and a corporate officer acting on behalf of one's corporation.'" *Louis Vuitton*, 736 F.3d at 1354–55 (quoting *Doe v. Thompson,* 620 So.2d 1004, 1006 (Fla.1993)). This is because "Florida courts have held 'that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his

employer.'" *Id.* (quoting *Doe*, 620 So.2d at 1006 (internal quotation marks omitted)).

Here, construing all reasonable inferences in Plaintiffs' favor, the letters sent by Familia Kahlo's General Manager Durán indicate that they were sent in Pinedo's individual capacity; therefore, as a threshold matter, the corporate shield doctrine does not apply. The letters refer to "the heiress of the painter Frida Kahlo" as "our represented [sic]" when discussing the Panamanian litigation, state that they are informing the recipients of the Spanish litigation "in our capacity as representatives of Mrs. Mara Cristina Teresa Romeo Pinedo," and threaten to "proceed without further ado to subjectively expand against [the recipients] the lawsuit that is being substantiated before the Spanish jurisdiction." Durán twice identified himself or Familia Kahlo as the "representative" of Pinedo. We cannot imagine a clearer way for Durán to have indicated that he was representing Pinedo in her individual capacity and was sending the cease-and-desist letters on Pinedo's behalf as her agent.

Neither Durán's nor Pinedo's affidavits rebut the plain language of the cease-and-desist letters. Durán merely attests that "Familia Kahlo S.A. de C.V. did send certain cease and desist letters," but he never denies that he or Familia Kahlo was Pinedo's representative. And Pinedo's affidavit says nothing at all about the letters. Defendants argue that Pinedo denies this indirectly, by saying "that she does not 'conduct any business in the State of Florida in an individual capacity,' and does not 'personally engage in any significant or ongoing activity in the State of Florida.'" But while

conducting "business" or engaging in "significant or ongoing activity" are relevant to other sections of Florida's long-arm statute, *see, e.g.*, §§ 48.193(1)(a)(1) and 48.193(2), they are not required for personal jurisdiction under § 48.193(1)(a)(2) based on committing a tort in Florida. Indeed, we have consistently held that, under Florida law, a nonresident defendant commits a tortious act in Florida by performing an act outside the state that causes injury within Florida. *See Del Valle*, 56 F.4th at 1272–73 (citations omitted)).

Because Defendants do not directly rebut the plain text of the letters, we conclude, as Plaintiffs allege and the letters state, that the letters were sent on behalf of both Familia Kahlo and Pinedo individually, using Durán or Familia Kahlo as her agent. *Cf. Radcliffe v. Gyves*, 902 So. 2d 968, 972 n.4 (Fla. Dist. Ct. App. 2005) ("Although the Shareholders allege that the Board committed intentional willful acts, the Board's sworn affidavits, which were never rebutted by the Shareholders, denied such willful acts thereby rendering the corporate shield doctrine fully applicable."), *disapproved on other grounds by Kitroser v. Hurt*, 85 So. 3d 1084 (Fla. 2012).

Defendants' argument that Plaintiffs must prove Pinedo acted for her own benefit is of no moment. Because Plaintiffs have established that Pinedo acted individually through Durán or Familia Kahlo, it does not matter for whose benefit she acted. *See Kitroser*, 85 So. 3d at 1090 ("Florida courts have personal jurisdiction over nonresident defendants whose alleged negligent acts occur in-state irrespective of whether these acts occurred for the benefit of

a corporate employer.").  And while Defendants argue that Pinedo must have been a "primary participant," Plaintiffs have effectively alleged this by claiming she sent letters through her agent.

Having concluded that both Pinedo and Familia Kahlo are subject to Florida's long-arm statute and the corporate shield doctrine does not apply in this case, we turn to whether exercising personal jurisdiction over Defendants complies with due process requirements.

### B. Whether personal jurisdiction over Familia Kahlo and Pinedo complies with due process requirements?

We consider three factors when evaluating whether exercising specific personal jurisdiction over Familia Kahlo and Pinedo under Florida's long-arm statute comports with the Due Process Clause: "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton*, 736 F.3d at 1355.

"The plaintiff bears the burden of establishing the first two prongs [of the Due Process Clause test], and if the plaintiff does so, 'a defendant must make a "compelling case" that the exercise of jurisdiction would violate traditional notions of fair play and

substantial justice.'" *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,* 593 F.3d 1249, 1267 (11th Cir. 2010)).

In this case, the district court considered only the second prong of the three-part test because it determined that the exercise of personal jurisdiction was barred under that prong. Because we disagree with the district court, we consider all three prongs, and we conclude that exercising personal jurisdiction would not violate the Due Process Clause.

### i. Plaintiffs' claims "arise out of or relate to" Defendants' contacts with Florida.

The first prong focuses on the "essential foundation" of specific jurisdiction, evaluating the "'relationship among the defendant, the forum, and the litigation.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). "The principal way to establish this relationship is through an 'activity or an occurrence that takes place in the forum [s]tate and is therefore subject to the [s]tate's regulation.'" *SkyHop Techs., Inc.*, 58 F.4th at 1229 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021)).

Such a relationship exists here. Defendants sent cease-and-desist letters into Florida that threatened litigation based on allegedly false assertions of trademark ownership. The circumstances resemble those in *SkyHop*, where the defendant "knowingly and intentionally directed its emails demanding compensation and withholding SkyHop's passwords into Florida, and a Florida resident received them." *Id.* at 1229. Through their letters, Defendants

directed their conduct into Florida, and that "very same conduct" serves as the basis for Plaintiffs' instant claims. *Id.* Like the emails in *SkyHop*, Defendants' cease-and-desist letters to Plaintiffs' licensees "triggered" Plaintiffs' claim of tortious interference. Because that claim arises out of, or relates to, Defendants' communications into Florida, this litigation bears the required connection to Defendants' contacts with Florida.

### ii. Defendants "purposefully availed" themselves of the privilege of conducting activities within Florida.

"In cases … involving an intentional tort, two applicable tests can determine whether purposeful availment occurred: the effects test and the traditional minimum-contacts test." *Id.* at 1230. "[E]ither test suffices …." *Id.* The district court elected to apply only the minimum contacts test and held that Defendants "did not purposefully avail themselves of the privilege of conducting activities within Florida." We disagree with the district court's analysis and conclusion.

First, we conclude that here purposeful availment occurred under the effects test, which alone is sufficient to satisfy the second prong. *SkyHop Techs., Inc.*, 58 F.4th at 1230. The effects test "requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Moore v. Cecil*, 109 F.4th 1352, 1362 (11th Cir. 2024) (cleaned up). Each factor is satisfied here. Plaintiffs plausibly allege that

Defendants committed an intentional tort. These intentional torts took aim at Florida, as Defendants sent multiple cease-and-desist letters to Florida entities, in an attempt to stop an exhibition in Miami. That Defendants sent "only" two letters is unpersuasive. After all, a "single tortious act can establish purposeful availment without regard to whether the defendant had any other contacts with the forum state," *Del Valle*, 56 F.4th at 1276, and the letters were sent to stop the single exhibition in Florida. Further, Defendants' alleged torts caused injury within Florida, which they should have reasonably anticipated. Like in *SkyHop*, it was foreseeable that Plaintiffs "would feel the harm … in Florida." 58 F.4th at 1230–31.

Second, purposeful availment also occurred under the traditional minimum contacts test. "The minimum contacts test assesses the nonresident defendant's contacts with the forum state and asks whether those contacts (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Del Valle*, 56 F.4th at 1276. "[W]e identify all contacts between the nonresident defendant and the forum state and ask whether, individually or collectively, those contacts satisfy the relevant criteria." *Id*. "[T]he nonresident's contact with the forum need not give rise to the plaintiff's claim." *Id*.

Applying the first of these factors, Defendants' alleged contacts with Florida relate to the cause of action. The cease-and-

desist letters sent to Plaintiffs' business partners in Florida directly gave rise to the tortious interference claim. *See id.* at 1276 ("[T]he Florida contacts of the Booking Entities and Expedia entities are sufficiently related to the plaintiffs' claims. Although direct causation between the nonresident's forum contacts and the plaintiff's cause of action is not required, the relevant claims here … are based in part on those contacts." (internal citation omitted)).

Next, by sending the cease-and-desist letters, Defendants purposefully availed themselves of the privilege of conducting activities in Florida. Defendants characterize the letters as informative and contend that, without more, the communications are not sufficient to establish purposeful availment based on precedent. *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1988). But as discussed above, Defendants' letters were allegedly tortious, and the authority Defendants rely on also has been called into question. *See Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1155 (Fed. Cir. 2021) ("Our more recent cases [in relation to *Red Wing*] have concluded that, in the context of patent litigation, communications threatening suit or proposing settlement or patent licenses can be sufficient to establish personal jurisdiction."). Thus, the two tortious cease-and-desist letters sent into Florida for the purpose of preventing an exhibition and other business activities are enough to constitute purposeful availment, at least where the cause of action directly arises from the contacts with the forum. *See Louis Vuitton*, 736 F.3d at 1358 ("[P]urposeful availment for due process was shown here because, in addition to his fully interactive 'pendoza.com' website accessible in Florida, Mosseri

had other contacts with Florida—through selling and distributing infringing goods through his website to Florida consumers—*and the cause of action here derives directly from those contacts.*" (emphasis original)).

Finally, after sending the cease-and-desist letters to Florida entities, Defendants should have reasonably anticipated being haled into court in Florida. *See Calder v. Jones*, 465 U.S. 783, 789–90 (1984) (in which the Supreme Court held petitioners should have reasonably anticipated being haled into court in a certain state, given their alleged actions "were expressly aimed" at that state and they "knew that the brunt of that injury would be felt by respondent in the [s]tate. . .."). Sent under the false claim of trademark ownership, the letters targeted business activities in Florida. Given that such conduct, if proven, constitutes a tort under Florida law, Defendants should have reasonably anticipated needing to defend their actions in Florida courts.

### iii. The exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

For this third prong of the analysis, "we consider these factors: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Louis Vuitton*, 736 F.3d at 1358 (cleaned up). Because Defendants do not make a "compelling case" for violations of traditional notions of fair play and substantial justice on any of

the factors, *id.* at 1355, we conclude this prong favors the exercise of personal jurisdiction.

### 1. Burden on the Defendants

Plaintiffs argue that Defendants would not be burdened by litigating in Florida because Defendants have already initiated lawsuits in Spain and Panama and travel extensively in the United States.[1]  Though Defendants acknowledge the foreign litigation, they maintain that adding another lawsuit in Florida would nonetheless increase their burden.  And Defendants contend they should not be burdened simply for informing others of their trademark rights.

Defendants' arguments are not persuasive.  We understand that an additional lawsuit would increase Defendants' burden, but this could be said for *any* lawsuit.  The fact that Defendants have initiated lawsuits in Spain and Panama demonstrates that they are capable of and undeterred from litigation.  They cannot now assert a burden just because they did not initiate this litigation.  And since their cease-and-desist letters exceeded the bounds of informative communications, Defendants cannot suggest they are being burdened simply for informing others of their intellectual property rights.

---

[1] Defendants' travels include trips to San Antonio, Boston, Dallas, Denver, San Francisco, Chicago, New York, Houston, and Los Angeles.

### 2. Florida's interest in adjudicating the dispute

Plaintiffs contend that Florida has an interest in exercising personal jurisdiction over those who commit intentional torts against Florida residents. Defendants counter that Florida has little interest in this dispute since Plaintiffs are Panamanian nationals, Defendants are Mexican nationals, the alleged harm is not specific to Florida, and the economic impact on Florida is negligible.

Defendants' arguments, however, gloss over the allegation that FKC is a citizen of both Panama and Florida and the district court's findings that Plaintiffs conduct business in Florida and their business relationships in Florida were harmed. Florida's interest in adjudicating disputes that involve harm or business relationships within its borders is clear. *See Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 776 (1984) ("[I]t is beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State."); *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008) (noting that the Supreme Court "emphasized that states have a special interest in exercising jurisdiction over those who commit intentional torts causing injury to their residents"). Defendants' attempts to downplay Florida's interests are unavailing.

### 3. Plaintiffs' interest in obtaining convenient and effective relief

According to Plaintiffs, they have an interest in obtaining relief in Florida because FKC's principal place of business is in Florida and because some of their affected business partners are also in the

state.  Defendants counter that this litigation in Florida will not provide Plaintiffs with convenient and effective relief because it will not affect the lawsuits in Spain and Panama, which Defendants claim may render this case moot.

We do not consider Defendants' rebuttal persuasive, as foreign lawsuits cannot determine trademark use or validity in the United States. *See Pers.'s Co.*, 900 F.2d at 1568–69.  Further, Defendants' concern that the Panama litigation could lead to FKC's dissolution and render this case moot is too speculative; there is no indication that litigation is near resolution.  In contrast, Plaintiffs have a present interest in securing relief in Florida.

### 4. Judicial system's interest in resolving the dispute

Defendants argue that dismissing this case while the foreign lawsuits proceed would promote judicial efficiency, avoiding duplicative or conflicting litigation.  In their view, this case also discourages the pre-litigation resolution that their cease-and-desist letters sought.  Plaintiffs respond that Defendants' letters constituted tortious interference with their business relationships and trademark rights, not good-faith attempts at resolution.

For reasons we have previously discussed, neither of Defendants' arguments persuade: Lawsuits in Spain and Panama cannot determine trademark use in the United States, and Defendants' correspondence was not merely informative.  Thus, on balance, the judicial system's interests support exercising personal jurisdiction.

## IV.    CONCLUSION

For the reasons discussed above, we reverse the district court's dismissal of this case as to both Defendants on personal jurisdiction grounds, and we remand this case for further proceedings consistent with our opinion.

**REVERSED AND REMANDED**.