# United States Court of Appeals for the Federal Circuit

---

**XILINX, INC.,**
*Plaintiff-Appellant*

**v.**

**PAPST LICENSING GMBH & CO. KG,**
*Defendant-Appellee*

---

2015-1919

---

Appeal from the United States District Court for the Northern District of California in No. 5:14-cv-04963-LHK, Judge Lucy H. Koh.

---

Decided: February 15, 2017

---

MATTHEW J. SILVEIRA, Jones Day, San Francisco, CA, argued for plaintiff-appellant. Also represented by PATRICK THOMAS MICHAEL.

NICOLE E. GLAUSER, DiNovo, Price, Ellwanger & Hardy LLP, Austin, TX, argued for defendant-appellee. Also represented by ANDREW DINOVO, JAY D. ELLWANGER.

CHARLES DUAN, Public Knowledge, Washington, DC, for amici curiae Public Knowledge, Electronic Frontier Foundation. Also represented by VERA RANIERI, Electronic Frontier Foundation, San Francisco, CA.

STEVEN MOORE, Kilpatrick Townsend & Stockton LLP, San Francisco, CA, for amici curiae for AO Kaspersky Lab, Limelight Networks, Inc., QVC, Inc., SAS Institute Inc., Symmetry LLC, Vizio, Inc.

HARRISON J. FRAHN, IV, Simpson Thacher & Bartlett, LLP, Palo Alto, CA, for amici curiae Thirty-Four Law Professors.

---

Before PROST, *Chief Judge,* NEWMAN, and DYK, *Circuit Judges.*

DYK, *Circuit Judge.*

Xilinx, Inc., ("Xilinx") appeals from a judgment of the United States District Court for the Northern District of California dismissing Xilinx's declaratory judgment action against Papst Licensing GmbH & Co. KG ("Papst") for lack of personal jurisdiction. Because we hold that the district court has specific personal jurisdiction over Papst with respect to Xilinx's declaratory judgment action, we reverse and remand.

## BACKGROUND

Xilinx is a Delaware corporation that is headquartered in San Jose, California. Xilinx designs, develops, and markets programmable logic devices for use in electronics systems. Papst is the assignee of U.S. Patent Nos. 6,574,759 and 6,704,891 (collectively, "the patents-in-suit"), which are directed to methods for generating and verifying memory tests in electronics.

Papst is organized under the laws of Germany and has its principal place of business there. Papst is a non-practicing entity that is solely in the business of monetizing and licensing intellectual property rights. According to Papst, it "has always been in the business of obtaining and licensing patents, it does not manufacture or sell any

consumer products, and it has always had fewer than 30 employees." J.A. 1133. Xilinx points to various Papst marketing materials and its website in which Papst describes itself as "a global patent licensing and monetization firm specialized in enforcing infringed patents with the goal to conclude a license agreement with the infringer." Exhibit 9 at 1, Declaration of Jason M. Gonder, *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, No. 5:14-cv-04963-LHK (N.D. Cal. Apr. 15, 2015), ECF No. 53-9 ("Exhibit 9").

These materials explain the business model by which Papst acquires and then asserts patent rights. "Before agreeing to purchase a patent," Papst performs "due diligence" to "identify patent infringement by comparing the patent claims against the potentially infringing products." J.A. 1733. Papst's due diligence involves "identify[ing] the companies potentially involved in infringements, and the markets they are selling their product in—where they are located, and how large they are, including where the product is made as well as where it is sold." *Id.*

When Papst identifies infringers, it "notif[ies] them that [Papst] believe[s] they are infringing." *Id.* Papst "then travel[s] extensively to visit the infringers." *Id.* "After technical discussions confirming the infringement, the conversation moves towards licensing the patents through an agreement." *Id.* "If negotiations fail, [Papst] is prepared to effectively enforce the respective patents in courts. Especially in the United States, Germany, and the Netherlands [Papst has] years and years of experience in patent litigation." Exhibit 9 at 1. Papst's marketing materials explain that Papst has "been very successful with legal actions. With [Papst's] outside partners including attorneys, [Papst has] been very successful and won many high-profile patent cases." J.A. 1733.

Papst has repeatedly filed patent infringement suits in California federal courts. The record shows that Papst has filed patent infringement lawsuits in California at least seven times between 1994 and 2007 based on other patents in Papst's portfolio.

Papst's actions leading up to the filing of this declaratory judgment action are consistent with Papst's business model. Before acquiring the patents-in-suit in October 2012, Papst performed its due diligence by investigating potential infringers and targets for licensing of those patents. Xilinx describes the investigation as involving twenty-nine target companies, twenty-eight of which are based, or have significant presence, in California. One of the companies that Papst investigated was Xilinx.

In January 2014, Papst sent a patent-infringement notice letter to Xilinx. In the letter, Papst identified several of Xilinx's products that allegedly infringed the patents-in-suit, and stated that "Papst proposes commencing discussions with Xilinx so that Xilinx can consider taking a license to the Papst Patents." J.A. 1053. After Xilinx did not respond to Papst's first set of letters, in April 2014, Papst sent a second letter, "again encourag[ing] Xilinx to participate in a dialogue regarding taking a license to the" patents-in-suit. J.A. 1056. On October 16, 2014, three representatives of Papst, including Papst's managing director, its senior counsel, and its Texas-based outside counsel, traveled to California to meet with Xilinx. The purpose of the meeting was to discuss Papst's allegations of infringement of the patents-in-suit and Xilinx's potential licensing of these patents. No agreement resulted from these contacts.

On November 7, 2014, Xilinx filed this declaratory judgment action in the Northern District of California seeking a declaration that Xilinx's products do not infringe the patents-in-suit and that the patents are invalid. On the same day that Xilinx filed its declaratory judg-

ment action in California, Papst filed an infringement suit against Xilinx in the District of Delaware asserting the same patents-in-suit. Papst moved to dismiss the California declaratory judgment action for lack of personal jurisdiction, or in the alternative, transfer the action to the District of Delaware.

On July 9, 2015, the court granted Papst's motion and dismissed the declaratory judgment action for lack of personal jurisdiction. The court first determined that it lacked general jurisdiction over Papst because it "is not at home in California," recognizing that "Papst is not incorporated in California, nor does it have its principal place of business" there. J.A. 8–10.

The court also held that it lacked specific personal jurisdiction over Papst. The court observed that "Papst certainly has many connections to the state of California." J.A. 22–23. However, relying principally on our decisions in *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998), and its progeny, the court recognized that "even if the 'purposefully directed' and 'arises out of' prongs are satisfied by the defendant's enforcement activities" in the forum, "[n]ot all assertions of jurisdiction based on enforcement activities comport with 'fair play and substantial justice.'" J.A. 11 (citing *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1333 (Fed. Cir. 2008)). The court determined that Papst's California contacts were "either related solely to Papst's attempts to license the patents, which the Federal Circuit has held insufficient, or according to Federal Circuit law are irrelevant to the parties' instant dispute." J.A. 23. With respect to Papst's prior litigation in California, the court explained that these "enforcement activities regarding other patents are irrelevant to the question at hand: whether this Court can assert specific jurisdiction over Papst based on its efforts to enforce the patents-in-suit." J.A. 22. "The Federal Circuit has 'consistently' made clear that the 'other activities' for purposes of personal

jurisdiction must relate to 'the relevant patents.'" *Id.* (quoting *Avocent*, 552 F.3d at 1334). The court concluded that "even when considered as a whole these connections are insufficient to vest this Court with specific jurisdiction over Papst." J.A. 23.

The court declined to allow additional discovery related to Papst's prior enforcement activities in California. The court noted that Papst had already provided some discovery and concluded that additional discovery would be a waste of resources.

Xilinx appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).[1]

## DISCUSSION

### I. MOOTNESS

Papst first argues that events post-dating Xilinx's filing of this appeal render the appeal moot. We disagree. "A case becomes moot . . . 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016), *as revised* (Feb. 9, 2016) (quoting *Knox v. Serv. Emps.*, 132 S. Ct. 2277, 2287 (2012)). Following dismissal of Xilinx's California declaratory judgment action in-

---

[1]    Altera Corporation ("Altera") was also a party to this appeal. Like Xilinx, it filed a declaratory judgment action in the Northern District of California, and Papst filed an infringement suit in the District of Delaware. The Northern District of California also dismissed Altera's declaratory judgment action for lack of personal jurisdiction. We subsequently granted Altera's unopposed motion for a determination that its appeal was moot based on Altera's filing of declaratory judgment counterclaims in Papst's California patent infringement action after it was transferred from Delaware.

volved in this appeal, on February 23, 2016, the District of Delaware transferred Papst's infringement suit to the Northern District of California—the same court that had dismissed the declaratory judgment action. Papst argues that the transferred action has provided Xilinx another opportunity to bring its declaratory judgment action as a counterclaim in its desired forum, rendering this appeal moot.

However, Xilinx has not asserted declaratory judgment counterclaims in the transferred action. The mere availability of this unpursued alternative route to relief does not render moot Xilinx's action seeking the same relief. *See Campbell-Ewald Co.*, 136 S. Ct. at 672 ("[A]n unaccepted settlement offer or offer of judgment does not moot a plaintiff's case . . . ."). Accordingly, Xilinx's appeal is not moot.

## II. PERSONAL JURISDICTION

The central issue in this case is whether the exercise of specific personal jurisdiction over Papst in California is fair and reasonable. "Personal jurisdiction is a question of law that we review *de novo*." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009). Because Xilinx's declaratory judgment appeal involves only claims of patent noninfringement, "we apply Federal Circuit law because the jurisdictional issue is intimately involved with the substance of the patent laws." *Id.* (internal quotation marks omitted) (quoting *Avocent*, 552 F.3d at 1328). Where, as here, "the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Avocent*, 552 F.3d at 1329 (quoting *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003)). We, like the district court, "accept the uncontroverted allegations in the plaintiff's

complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id.*

A

"Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics*, 566 F.3d at 1017 (quoting *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)). California's long-arm statute permits service of process to the full extent allowed by the due process clauses of the United States Constitution.[2] *Elecs. for Imaging*, 340 F.3d at 1349; *see also* Cal. Civ. Proc. Code § 410.10 (West). Accordingly, "the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

In the case of specific, as opposed to general jurisdiction, we have summarized the Supreme Court's due process jurisprudence in a three-factor test: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is

---

[2] As we explained in *Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995), the due process inquiry implicates the Due Process Clause of the Fifth Amendment, not the Fourteenth Amendment, because subject matter jurisdiction over a patent action exists by virtue of a federal question, not the diversity of the parties. *Id.* at 1544–45. Nonetheless, we have applied the Supreme Court's jurisprudence of personal jurisdiction regarding the demands of the Fourteenth Amendment's Due Process Clause to this context. *Id.*

'reasonable and fair.'" *Inamed*, 249 F.3d at 1360. "The first two factors correspond with the 'minimum contacts' prong of the [*International Shoe Co. v. Washington*, 326 U.S. 310 (1945)] analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Inamed*, 249 F.3d at 1360.

With respect to the first factor of the minimum contacts portion of specific personal jurisdiction analysis, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). As to the second factor, also part of the minimum contacts analysis, the court must determine whether "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923–24 (2011) (alterations in original) (quoting *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

Many of our recent cases have been concerned with the two minimum contacts factors of the analysis. We have considered forum-related activities of the patentee with respect to the patents in suit that do not necessarily relate to the particular controversy, such as exclusive licensing, though at the same time we have (appropriately) rejected the existence of contacts concerning other patents as being pertinent to the minimum contacts analysis. *See Avocent*, 552 F.3d at 1336 (explaining relevant contacts are those that the "defendant patentee purposefully directs . . . at the forum which relate in some material way to the enforcement or the defense of the patent"); *see also Campbell Pet Co. v. Miale*, 542 F.3d 879, 886 (Fed. Cir. 2008) (extra-judicial patent enforcement); *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006) (exclusive license); *Elecs. for Imaging*, 340 F.3d at 1351 (hiring of in-forum attorney

to communicate with plaintiff); *Inamed*, 249 F.3d at 1361 (exclusive license); *Akro*, 45 F.3d at 1548–49 (exclusive license).

Papst makes no argument that its activities directed to Xilinx in California do not satisfy the minimum contacts prong of the specific jurisdiction test. *See* Papst Br. at 21 ("A cease-and-desist letter to a forum resident may give rise to a declaratory judgment cause of action *and satisfy[] the minimum contacts portion of the specific jurisdiction test*." (emphasis added)). Indeed, there is no question that Papst has the required minimum contacts with California. Papst purposefully directed its activities to California when it sent multiple notice letters to Xilinx and traveled there to discuss Xilinx's alleged patent infringement and potential licensing arrangements.

Xilinx's declaratory judgment action of noninfringement certainly relates to these contacts. In the context of declaratory judgment actions involving assertions of patent noninfringement or invalidity, we have concluded that cease-and-desist letters sent by the patentee defendant into the forum are relevant contacts in the personal jurisdiction analysis. *Red Wing*, 148 F.3d at 1360. Minimum contacts may be established by "the threat of an infringement suit, as communicated in a cease-and-desist letter." *Id.*; *see also id.* (explaining that "cease-and-desist letters alone are often substantially related to the cause of action (thus providing minimum contacts)").

Even more significant than the notice letters is Papst's visit to Xilinx in California, another activity that certainly "relate[s] in some material way to the enforcement or the defense of the patent." *Avocent*, 552 F.3d at 1336. As the Supreme Court has explained, "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). This court has previously recognized

that in-person visits to the forum are significant contacts in the declaratory judgment context. *See Elecs. for Imaging*, 340 F.3d at 1351; *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1352 (Fed. Cir. 2002). Therefore, the minimum contacts prong is satisfied here.

B

In arguing against personal jurisdiction, Papst focuses entirely on the "reasonable and fair" prong and argues that "exercising specific jurisdiction over a patentee based solely on cease-and-desist letters, which contain notice of the sender's patent rights, accusations of infringement, and/or licensing offers, does not comport with fair play or substantial justice." Papst Br. at 21–22 (citing *Red Wing*, 148 F.3d at 1360–61).

As the Supreme Court has made clear, the specific jurisdiction analysis is a two-step process, and the reasonableness prong is separate from the minimum contacts prong. The Court noted in *Daimler AG v. Bauman*, 134 S. Ct. 746, 762 n.20 (2014), "[f]irst, a court is to determine whether the connection between the forum and the episode-in-suit could justify the exercise of specific jurisdiction. Then, in a second step, the court is to consider several additional factors to assess the reasonableness of entertaining the case." *See also id.* at 764 (Sotomayor, J., concurring) ("Our personal jurisdiction precedents call for a two-part analysis. The contacts prong asks whether the defendant has sufficient contacts with the forum State to support personal jurisdiction; the reasonableness prong asks whether the exercise of jurisdiction would be unreasonable under the circumstances."); 4 Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice and Procedure* § 1067.2 (4th ed. 2015) (explaining that the Supreme Court "case law reflects a two-step approach that requires both (1) that the defendant establish minimum contacts with the forum State, and (2) that

the assertion of personal jurisdiction is reasonable and comports with fair play and substantial justice").

The inquiry under the reasonableness prong (step two) is not limited to the specific facts giving rise to, or relating to, the particular litigation. "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of *other factors* to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (emphasis added) (quoting *Int'l Shoe*, 326 U.S. at 320). These *other factors*—the burden on the defendant, the plaintiff's interest in obtaining convenient and effective relief, etc., *id.* at 477—often cannot be analyzed without looking to circumstances beyond those that give rise or relate to the specific lawsuit.

In *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 116 (1987), the one case where the Supreme Court held that the reasonableness requirement was not satisfied, the Court looked beyond minimum contacts to consider other factors. For instance, the Court explained that the distance between Asahi's headquarters in Japan and the California forum, as well as subjecting a foreign company to United States law, would impose a heavy burden on Asahi. *Id.* at 114. The Court also explained that the plaintiff, another foreign entity, did not demonstrate that litigating in California would be more convenient than litigating in Taiwan or Japan. *Id.*

While the reasonableness inquiry is not limited to considering the minimum contacts, the Supreme Court has made clear that the reasonableness prong is typically satisfied by a showing of minimum contacts. "Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must

present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see also id.* at 476 (explaining that where a defendant's "activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well" (quotation marks omitted)).  The Court identified five considerations relevant to the reasonableness analysis:

> [C]ourts in "appropriate case[s]" may evaluate [1] "the burden on the defendant," [2] "the forum State's interest in adjudicating the dispute," [3] "the plaintiff's interest in obtaining convenient and effective relief," [4] "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and [5] the "shared interest of the several States in furthering fundamental substantive social policies."

*Id.* at 477 (second alteration in original) (quoting *World-Wide Volkswagen*, 444 U.S. at 292).

Here, as discussed in Part II.A above, Papst has the required minimum contacts with California to make the exercise of personal jurisdiction presumptively reasonable.  For the reasons that follow, Papst has failed to meet its burden to show a "compelling case" under *Burger King* that jurisdiction is unreasonable.  471 U.S. at 477.

Papst makes no argument that factors 2–5 weigh against a finding of personal jurisdiction, *see id.*, nor could it.  Xilinx, which is headquartered in California, indisputably has an interest in protecting itself from patent infringement by obtaining relief "from a nearby federal court" in its home forum.[3]  *Breckenridge*, 444 F.3d at

---

[3]    Absent an ability to litigate its declaratory judgment action in California, Xilinx would be remitted to

1367–68 (explaining that one reasonableness factor "requires the court to focus on the convenience and effectiveness of relief from the plaintiff's perspective"). The Supreme Court has recognized the importance of declaratory judgment actions in patent cases for allowing accused infringers to secure a determination that their products do not infringe the patent or that the patent is invalid. *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849 (2014); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137 (2007). Likewise, California has "definite and well-defined interests in commerce and scientific development," *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 430 (Fed. Cir. 1996), and "California has a substantial interest in protecting its residents from unwarranted claims of patent infringement," *Elecs. for Imaging*, 340 F.3d at 1352. Jurisdiction over Xilinx's declaratory judgment claims in California would also result in an efficient resolution of the controversy. Finally, there does not appear to be any conflict between the interests of California and any other state, because "the same body of federal patent law would govern the patent invalidity claim irrespective of the forum." *Id.*

This leaves for our consideration the burden on the defendant. With respect to this factor, the Supreme Court has explained, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi*, 480 U.S. at 114. Thus, instances in which the fairness analysis will defeat "otherwise constitutional personal jurisdiction are limited to the rare situation in which the

---

litigating on the opposite side of the country in the United States District Court for the Eastern District of Virginia, the statutory venue for actions against patentees not residing in the United States. *See* 35 U.S.C. § 293.

plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Akro,* 45 F.3d at 1549 (quotation marks omitted).

Papst argues that its contacts with Xilinx in California are insufficient to justify the burden of litigating in that forum. Papst focuses on our prior cases holding that because of "policy considerations unique to the patent context," *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1206 (Fed. Cir. 2003), a patentee's sending of warning letters and offers to license, "without more, . . . are not sufficient to satisfy the requirements of Due Process in declaratory judgment actions." *Red Wing*, 148 F.3d at 1360.

In *Red Wing*, we explained that although warning letters satisfy the requirement of minimum contacts, "such letters cannot satisfy the [fairness] prong of the Due Process inquiry." *Id.* at 1361. We explained the rationale for this rule: "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Id.* at 1360–61. To require a defendant to answer "in a distant foreign forum when its only contacts with that forum were efforts to give proper notice of its patent rights" would place an undue burden on the defendant.[4] *Id.* at 1361.

---

[4] The court further held that the inclusion of offers to license the patents "within a cease-and-desist letter does not somehow convert that letter into something more than it was already." *Id.* The court explained that "[a]n offer to license is more closely akin to an offer for settlement of a disputed claim rather than an arms-length negotiation in anticipation of a long-term continuing

We disagree with Papst that this case is controlled by *Red Wing* and its holding that certain types of contacts, by themselves, are not sufficient to establish the reasonableness of jurisdiction. As we have discussed in the minimum contacts analysis, Papst has done more than just send letters to Xilinx. Representatives from Papst traveled to California to meet with Xilinx in person to discuss Papst's infringement contentions and licensing offer with respect to the patents-in-suit.[5] The Supreme Court noted in *Burger King* that "territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there." 471 U.S. at 476.

Moreover, there are other facts that, under the *Burger King* analysis, confirm the view that the burden on the defendant is not undue. For instance, the burden on Papst is mitigated by Papst's status as a non-practicing patent holder residing outside the United States. This is not a case like *Red Wing*, where the defendant conducts its affairs in one state and is called to litigate in a distant state rather than its own residence. *See* 148 F.3d at 1357. By the very nature of its business, Papst must litigate its patents in the United States in fora far from its home

---

business relationship" and that the policy favoring settlement "squarely invokes one of the considerations enumerated by the Supreme Court for the second prong of a proper Due Process analysis, namely, 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

[5]   We note that Papst also traveled twice to California to meet with Altera for the same purpose.

office. In this context the burden on Papst to litigate in California appears not undue.[6]

The lack of significant burden on Papst is also evidenced by Papst's prior litigations in California itself. Papst has repeatedly availed itself of the California federal court system—at least seven times—by filing patent infringement lawsuits there. In this respect, this case is similar to *Viam*. In *Viam*, we held that requiring an Italian patent owner and its Iowa exclusive agent to litigate a declaratory judgment action in California was not unduly burdensome where those entities had initiated a suit enforcing the same patent in the same district in California against other parties. 84 F.3d at 430. Our reasoning that personal jurisdiction was fair rested in relevant part on the fact that the suit demonstrated that the patent owner "has found a way to shoulder successfully the burden of litigating in California." *Id.*

Our decision in *Acorda Therapeutics Inc. v. Mylan Pharmaceuticals Inc.*, 817 F.3d 755, 764 (Fed. Cir. 2016), makes clear the relevance of a defendant's litigations in the forum. There we explained that the burden on an accused infringer answering an infringement lawsuit "will be at most modest, as [the accused infringer], a large generic manufacturer, has litigated many . . . lawsuits in [the forum], including some that it initiated." *Id.*

Finally, Papst has not made any demonstration that it would be unduly burdensome to litigate in California. For all of these reasons, therefore, we hold that Papst

---

[6]   We do not suggest that the foreign location of a defendant itself supports personal jurisdiction. *See Avocent*, 552 F.3d at 1339. Rather, we note that Papst, as a non-practicing patent owner, necessarily must litigate its patents somewhere in the United States.

would not be subject to undue burdens if forced to defend its patents in California.

In light of the totality of circumstances present in this case, this is not "one of the 'rare' situations in which sufficient minimum contacts exist but where the exercise of jurisdiction would be unreasonable." *Elecs. for Imaging*, 340 F.3d at 1352. In other words, there is simply no "compelling case" here that personal jurisdiction over Papst is unreasonable. *Burger King*, 471 U.S. at 477.

## CONCLUSION

We hold that Xilinx has established that personal jurisdiction over Papst is proper in California. We need not address Xilinx's additional arguments regarding the district court's denial of jurisdictional discovery. Accordingly, we reverse the district court's dismissal of Xilinx's declaratory judgment complaint with respect to its noninfringement claims and remand for further proceedings consistent with this opinion.

## REVERSED AND REMANDED

### COSTS

Costs to Xilinx.