# United States Court of Appeals for the Federal Circuit

---

**APPLE INC.,**
*Plaintiff-Appellant*

**v.**

**ZIPIT WIRELESS, INC.,**
*Defendant-Appellee*

---

2021-1760

---

Appeal from the United States District Court for the Northern District of California in No. 5:20-cv-04448-EJD, Judge Edward J. Davila.

---

Decided: April 18, 2022

---

LAUREN ANN DEGNAN, Fish & Richardson PC, Washington, DC, argued for plaintiff-appellant. Also represented by ASHLEY BOLT, EDA STARK, BENJAMIN THOMPSON, Atlanta, GA; BENJAMIN ELACQUA, Houston, TX.

CORTNEY ALEXANDER, Kent & Risley LLC, Alpharetta, GA, argued for defendant-appellee. Also represented by STEPHEN ROBERT RISLEY.

---

Before HUGHES, MAYER, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge.*

Apple Inc. appeals from a judgment of the U.S. District Court for the Northern District of California dismissing its complaint for declaratory judgment of noninfringement against Zipit Wireless, Inc. for lack of personal jurisdiction. The district court held that it would be unreasonable to exercise personal jurisdiction over Zipit based on the nature of Zipit's communications with Apple in the Northern District. Specifically, the district court read our precedent as applying a bright-line rule that patent infringement notice letters and related communications can never form the basis for personal jurisdiction. We agree with Apple that the district court erred in this regard.

Guided by the Supreme Court and our own precedent, we conclude, as the district court likely would have absent its erroneous interpretation of our precedent, that Zipit is subject to specific personal jurisdiction in the Northern District of California for purposes of Apple's declaratory judgment action. We therefore reverse the judgment dismissing Apple's declaratory judgment complaint and remand for further proceedings.

BACKGROUND

I

Zipit is a Delaware corporation with a principal place of business in Greenville, South Carolina, and with each of its fourteen employees located in South Carolina. Zipit is the assignee of U.S. Patent Nos. 7,292,870 and 7,894,837 (collectively, the "patents-in-suit"), which are generally directed to wireless instant messaging devices that use Wi-Fi to send and receive instant messages.

The parties' communications regarding the patents-in-suit and the instant lawsuit date back to at least 2013, when Zipit first contacted Apple in the Northern District of California. Over the course of three years, the parties exchanged several rounds of correspondence and met in

person at Apple's Cupertino headquarters located in the Northern District. The parties discussed, among other things, the possibility of Apple buying or licensing the patents-in-suit from Zipit; the status and perceived strength of ongoing inter partes review proceedings involving the patents-in-suit; and technical details regarding potential infringement (and allegations of willful infringement). Ultimately, these discussions led to Zipit filing a patent infringement action against Apple.

The record before the district court[1] indicates that Zipit first traveled to Apple's Cupertino headquarters on December 3, 2013. J.A. 146. Following this in-person meeting, the parties had "at least" four "detailed calls" in December 2013, February 2014, and March 2014. *Id.* During these meetings and calls, Apple and Zipit discussed licensing the patents-in-suit and Apple's contentions that it "does not practice any Zipit patent claims" and that the "patents[-in-suit] are invalid." *Id.* Indeed, the parties went so far as to exchange competing drafts of a license agreement in August and September 2014 but ultimately did not reach any

---

[1]    On January 25, 2022, we granted Apple's opposed motion to file a supplemental appendix. *See* Order, *Apple Inc. v. Zipit Wireless, Inc.*, No. 21-1760, ECF No. 38 (Fed. Cir. Jan. 25, 2022). The supplemental appendix includes a portion of a letter from Zipit's outside counsel to Apple's general counsel that was not part of the record before the district court. In its briefing on the motion to supplement, Apple informed the court that the limited purpose of this non-record letter was to demonstrate that it was not misleading the court in its opening brief on appeal when it stated that Zipit initiated the contacts, an allegation that Zipit had implied in its responsive brief. Because this letter was not part of the district court record, we do not consider the substance of this letter beyond this limited purpose identified by Apple.

agreement.  Zipit traveled to Apple's Cupertino offices for a second in-person meeting to continue discussions on January 13, 2015.  *Id.*

Following the January 2015 meeting, Apple and Zipit exchanged numerous letters and emails throughout 2015 and 2016.  The first email, dated July 18, 2015, was sent by Mr. Stephen Risley (Zipit's outside counsel) regarding "Apple's Ongoing Infringement" of the patents-in-suit.  J.A. 144.  This email, directed to Apple's in-house counsel (Mr. Rudhir Patel) sought a "definitive response" from Apple regarding the parties' ongoing discussion of Apple's "purchase and/or license" of the patents-in-suit.  *Id.*  Referencing a discussion that had taken place the day prior, Mr. Risley also attached for Apple's review Zipit's opposition brief to a petition for IPR of the '837 patent.  He also noted that additional briefs as to other patents were forthcoming.  Mr. Risley concluded: "I understand that Apple will review Zipit's IPR briefs and respond to Zipit in 1-2 weeks." *Id.*

Apple responded two months later.  On September 25, 2015, Mr. Patel sent Mr. Risley a letter reiterating Apple's view that it "does not need a license" to the patents-in-suit "because Apple does not practice any" claims of the patents-in-suit and the claims are invalid.  J.A. 146.  In describing its grounds for noninfringement, Apple referred specifically to deficiencies in claim charts it had received from Zipit.  *See id.*  Apple also stated that its view that the claims were invalid was "confirmed by [its] review of the materials before the [Patent Trial and Appeal Board], and additional prior art not being considered" in the pending IPRs.  J.A. 147.

The discussions escalated.  On October 14, 2015, Mr. Risley sent a responsive letter addressed to Mr. Patel (with Apple's Cupertino office listed on the address line) regarding "Apple's Ongoing Willful Infringement" of the patents-in-suit.  J.A. 141.  In the letter, Mr. Risley

conveyed Zipit's "continue[d]" belief that "Apple has and continues to willfully infringe" the patents-in-suit. *Id.* He concluded the letter by referencing willful infringement a second time: "Zipit is confident that if it becomes necessary a Court will view your September 25, 2015 [letter] as nothing more than a transparent attempt by Apple to justify Apple's past, present, and future willful infringement of Zipit's patents." *Id.* Apple responded to this letter on December 8, 2015. J.A. 151.

Mr. Risley sent another email to Mr. Patel five months later on April 7, 2016. In this email, Mr. Risley informed Apple that the Board had "confirmed the patentability of all claims" of the patents-in-suit. J.A. 139. He concluded the letter by once again stating Zipit's belief "that Apple has and continues to infringe" the patents-in-suit. *Id.*

The parties thereafter had another phone call on April 26, 2016, after which Mr. Patel, on May 2, 2016, responded in writing to Zipit's latest letter. J.A. 150. Mr. Patel reiterated Apple's belief that the patents-in-suit are invalid notwithstanding the Board's patentability determination in the IPR proceedings. In response to Zipit's continued allegations of infringement, Apple explained that it had "repeatedly refuted those allegations" and that Zipit had failed to substantively respond to Apple's positions in this regard. J.A. 151. The letter concluded: "Should Zipit substantively respond to Apple's explanation of why Apple's products do not fall within the scope of [the patents-in-suit], Apple will further consider Zipit's positions." *Id.*

II

Over four years later, on June 11, 2020, Zipit sued Apple in the Northern District of Georgia, accusing Apple of infringing the patents-in-suit. J.A. 16 (Compl. ¶ 2) (citing Compl., *Zipit Wireless, Inc. v. Apple Inc.*, Civil Action No. 1:20-cv-02488-ELR (N.D. Ga. June 11, 2020), ECF No. 1). Zipit voluntarily dismissed the case without prejudice two weeks later on June 24, 2020. J.A. 16 (Compl. ¶ 3).

Nine days later, on July 3, 2020, Apple filed a complaint in the Northern District of California seeking a declaratory judgment of noninfringement of the patents-in-suit.

Zipit moved to dismiss Apple's complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  On February 12, 2021, the district court granted Zipit's motion, holding that it lacked specific personal jurisdiction over Zipit (general jurisdiction was not asserted).  *Apple Inc. v. Zipit Wireless, Inc.*, Case No. 5:20-cv-04448-EJD, 2021 WL 533754 (N.D. Cal. Feb. 12, 2021) (*Judgment Op.*).

The court concluded that Apple had established the requisite minimum contacts, highlighting that Zipit sent "multiple letters and claim charts accusing Apple of patent infringement" and in fact had "travel[ed] to Apple's offices in California to discuss these accusations." *Id.* at *3.  This, the court determined, made the exercise of specific personal jurisdiction over Zipit "presumptively reasonable." *Id.* (quoting *Xilinx, Inc. v. Papst Licensing GmbH & Co.*, 848 F.3d 1346, 1356 (Fed. Cir. 2017)).

The court then analyzed whether Zipit had established a "compelling case" that the exercise of jurisdiction would be unreasonable.  After analyzing each of the factors set forth in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–77 (1985), the court concluded that Zipit had not done so. *Judgment Op.*, 2021 WL 533754, at *3–4.  Specifically, the court found that "the majority of [the] reasonableness factors weigh in favor of adjudicating in California or, at the least, do not weigh significantly in favor of either party," and therefore jurisdiction over Zipit would not be unreasonable. *Id.* at *4.

The court went on to explain, however, that the Federal Circuit has held that "the exercise of personal jurisdiction . . . would be unconstitutional when '[a]ll of the contacts were for the purpose of warning against infringement or negotiating license agreements, and [the defendant] lacked

a binding obligation in the forum.'" *Id.* (alterations in original) (quoting *Levita Magnetics Int'l Corp. v. Attractive Surgical, LLC*, Case No. 19-cv-04065-JSW, 2020 WL 4580504, at \*6 (N.D. Cal. Apr. 1, 2020), which in turn quotes *Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*, 444 F.3d 1356, 1364 (Fed. Cir. 2006)).  The court thus determined that the exercise of jurisdiction over Zipit would be unreasonable because of "Zipit's lack of binding obligations tying it to California and because Zipit's contacts with California all related to the attempted resolution of the status of" the patents-in-suit, i.e., "for the purpose of warning against infringement." *Id.* at \*4.  Accordingly, despite determining that Apple had established that minimum contacts existed with the Northern District of California and that Zipit had not shown the exercise of jurisdiction would be unreasonable under Supreme Court precedent, the district court dismissed Apple's declaratory judgment action for lack of jurisdiction.

Apple appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

The sole issue in this case is whether the district court erred in dismissing Apple's declaratory judgment action for lack of specific personal jurisdiction over Zipit.  "Personal jurisdiction is a question of law that we review *de novo*." *Xilinx*, 848 F.3d at 1352 (quoting *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009)).  In reviewing a Rule 12(b)(2) dismissal for lack of personal jurisdiction, we "accept the uncontroverted allegations in [Apple's] complaint as true and resolve any factual conflicts in the affidavits in [Apple's] favor." *Id.* (quoting *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008)); *see also Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

Determining whether jurisdiction exists over Zipit (an out-of-state defendant) in the Northern District of

California involves two inquiries: whether California's long-arm statute permits service of process and whether assertion of personal jurisdiction comports with due process. *Xilinx*, 848 F.3d at 1352–53. Because "California's long-arm statute permits service of process to the full extent allowed by the due process clauses of the United States Constitution," the two inquiries become one. *Id.* at 1353 (citing Cal. Civ. Proc. Code § 410.10 (West)). That is, we need only consider "whether jurisdiction comports with due process." *Id.* (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)).

"[F]oreseeability . . . is critical to due process analysis," and the Supreme Court has made clear that the focus is on whether a given defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The Supreme Court has outlined three factors relevant to specific personal jurisdiction. In ascertaining whether the exercise of specific personal jurisdiction is appropriate in a given case, we consider: (1) whether the defendant "purposefully directed" its activities at residents of the forum; and (2) whether the claim "arise[s] out of or relate[s] to" the defendant's activities within the forum. *Id.* at 472–73 (first quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984); and then quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)); *see also Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*, 910 F.3d 1199, 1204 (Fed. Cir. 2018). We also consider (3) whether assertion of personal jurisdiction is reasonable and fair. *World-Wide Volkswagen*, 444 U.S. at 291–92; *see also Burger King*, 471 U.S. at 476–78; *Jack Henry*, 910 F.3d at 1204.

"The first two factors comprise the 'minimum contacts' portion of the jurisdictional framework . . . ." *Jack Henry*, 910 F.3d at 1204. The third factor assesses the reasonableness and fairness of exercising jurisdiction over an out-of-

state defendant with an eye toward ensuring that the exercise of jurisdiction does not offend the traditional notions of "fair play and substantial justice." *Burger King*, 471 U.S. at 476–77 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)) (the *Burger King* factors, discussed below). Where minimum contacts are satisfied, the exercise of jurisdiction is "presumptively reasonable." *See Xilinx*, 848 F.3d at 1356. Thus, the burden is placed on the defendant to present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

I

We begin by considering Zipit's contacts with California. The district court succinctly summarized Zipit's contacts as follows: Zipit "sen[t] multiple letters and claim charts accusing Apple of patent infringement and also travel[ed] to Apple's offices in California to discuss these accusations." *Judgment Op.*, 2021 WL 533754, at *3. The court explained that "[b]y doing so, Zipit . . . directed its activities to California" further noting that "because Apple's declaratory judgment claim directly stems from these enforcement efforts, Apple's claim also arises out of Zipit's contacts with California."[2] *Id.* The court, relying largely on our decision in *Xilinx*, thus determined that minimum contacts were satisfied. We agree.

In *Xilinx*, the defendant-patentee sent two notice letters to the declaratory-judgment plaintiff and eventually traveled to California to meet with the plaintiff to discuss allegations of infringement and potential licensing of the patents. 848 F.3d at 1350–51. We explained that the defendant had "purposefully directed its activities to

---

[2] Zipit does not dispute that Apple's declaratory judgment action arises out of Zipit's contacts with California.

California when it sent multiple notice letters to [the plaintiff] and traveled there to discuss the [plaintiff's] alleged patent infringement and potential licensing arrangements." *Id.* at 1354.  We readily concluded that there was "no question that [the defendant] ha[d] the required minimum contacts with California." *Id.*

So too here.  Indeed, *Xilinx* is virtually indistinguishable from the facts of this case, where Zipit likewise sent multiple communications to Apple in California and traveled twice to California to discuss allegations of infringement and the prospect of Apple licensing or purchasing the patents-in-suit.  And our decision in *Xilinx* is not alone in determining that minimum contacts were satisfied on similar facts.  *See, e.g., Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350–51 (Fed. Cir. 2003) (determining that telephone calls as well as an in-person meeting in the forum state "for the purpose of demonstrating the technology underlying" the asserted patents made a "*prima facie* case that defendants . . . purposefully directed their activities to California"); *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1352 (Fed. Cir. 2002) (determining that telephone calls, letters, and two in-person meetings in the forum state for purposes of negotiating a license agreement "constitute[d] sufficient minimum contacts"); *cf. Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[P]hysical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.").

Zipit argues that minimum contacts are not satisfied here, relying principally on this court's decision in *Autogenomics*.  In *Autogenomics*, the defendant-patentee sent a notice letter to the declaratory-judgment plaintiff, the plaintiff "expressed interest in taking a license," and two of the patentee's representatives flew to California (the forum state) to meet with the plaintiff's representatives.  566 F.3d at 1014–15.  Based on the facts of the case and the nature of the specific communications at hand, we determined

that the plaintiff "failed to allege sufficient activities 'relat[ing] to the validity and enforceability of the patent' in addition to the cease-and-desist communications" to demonstrate minimum contacts. *Id.* (alteration in original) (quoting *Avocent*, 552 F.3d at 1336).

Zipit argues (and Apple suggested) that *Autogenomics* created a "bright-line rule . . . that cease-and-desist letters and related in-person discussions cannot support [minimum contracts for] personal jurisdiction." Appellee's Br. 15–16; Appellant's Br. 26 n.6. As an initial matter, we note that there are material factual distinctions between *Autogenomics* and this case.[3] More importantly though, our precedent as a whole—including decisions both before and after *Autogenomics*—supports our determination that minimum contacts are satisfied here. *See, e.g.*, *Elecs. for Imaging*, 340 F.3d at 1350–51; *Deprenyl*, 297 F.3d at 1352; *Xilinx*, 848 F.3d at 1354. Indeed, this court in *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*—decided prior to

---

[3]    For example, unlike in *Autogenomics*, here Zipit: (1) kept Apple apprised of the status of ongoing IPRs of the patents-in-suit, *cf. Deprenyl*, 297 F.3d at 1352 (finding "significant" to purposeful availment the fact that the patentee kept the plaintiff "apprised of the prosecution status of the application that matured into" the asserted patent); and (2) escalated its allegations of infringement, going so far as twice describing Apple's infringement as willful, *cf. Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1156–57 (Fed. Cir. 2021) (considering amplified threats of infringement—e.g., the patentee identifying additional patents and accusing more products of infringement, as well as identifying counsel it had retained, naming venue, and providing a draft complaint to the plaintiff—relevant to purposeful availment); *Inamed*, 249 F.3d at 1361 ("The fact that [the patentee] chose to use the term 'willful' in conjunction with 'infringement' [in its notice letter] is significant.").

*Autogenomics*—acknowledged that "cease-and-desist letters alone are often substantially related to the cause of action (thus providing minimum contacts)." 148 F.3d 1355, 1360 (Fed. Cir. 1998).

Thus, in view of at least *Xilinx*, *Electronics for Imaging*, *Deprenyl*, and *Red Wing Shoe*, we agree with the district court that Zipit has the requisite minimum contacts with California.

## II

Having determined that Zipit purposefully directed its activities at California, we now consider whether Zipit has "present[ed] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. For the reasons below, we conclude that Zipit has not done so.

## A

We begin by addressing an error in the district court's determination that the exercise of jurisdiction would be unreasonable. After analyzing and weighing each of the *Burger King* factors, the court initially determined that Zipit had not shown that the exercise of jurisdiction would be unreasonable. It went on, however, to conclude that it would be unreasonable to exercise jurisdiction over Zipit under our court's precedent solely because "Zipit's contacts with California all related to the attempted resolution of the status of" the patents-in-suit, i.e., "for the purpose of warning against infringement." *Judgment Op.*, 2021 WL 533754, at *4. This was error. As we explained most recently in *Trimble*, "there is no general rule that demand letters can never create specific personal jurisdiction." 997 F.3d at 1156.

Zipit traces our court's treatment of notice letters back to *Red Wing Shoe*. There, we explained that "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without

subjecting itself to jurisdiction in a foreign forum." 148 F.3d at 1360–61. The policy behind *Red Wing Shoe* is simple:  a right holder should be permitted to send a notice letter to a party in a particular forum to try to settle disputes without being haled into court in that forum. Under our precedent (as well as that of our sister circuits), this policy must be considered in determining whether the exercise of jurisdiction would be reasonable and fair.

This policy is no doubt relevant.  As we explained in *Red Wing Shoe*, the "policy favoring settlement is manifest in . . . the Federal Rules of Evidence," *id.* at 1361 (citing Fed. R. Evid. 408), as well as Supreme Court precedent directing courts to consider "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," *id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 292). While *Red Wing Shoe* has been interpreted as resting on "policy considerations unique to the patent context," *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1206 (Fed Cir. 2003), this settlement-promoting policy permeates other areas of law as well, *see Trimble*, 997 F.3d at 1155 (first citing *Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) (en banc); and then citing *Oriental Trading Co. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001)).  It is not a patent-specific consideration.

For example, an en banc majority of the Ninth Circuit in *Yahoo!* considered a letter sent to Yahoo!'s headquarters in California alleging that Yahoo! was violating French law.  433 F.3d at 1202.  The majority ultimately determined that this letter, by itself, was not a sufficient basis for jurisdiction, explaining that

> [t]here are strong policy reasons to encourage cease and desist letters.  They are normally used to warn an alleged rights infringer that its conduct, if continued, will be challenged in a legal proceeding, and to facilitate resolution of a dispute without

> resort to litigation. If the price of sending a cease and desist letter is that the sender thereby subjects itself to jurisdiction in the forum of the alleged rights infringer, the rights holder will be strongly encouraged to file suit in its home forum without attempting first to resolve the dispute informally by means of a letter.

*Id.* at 1208 (collecting cases); *see also, e.g.*, *Int'l Med. Grp. v. Am. Arb. Ass'n*, 312 F.3d 833, 846–47 (7th Cir. 2002) (holding that exercise of specific personal jurisdiction over defendant "would not comport with substantial justice and fair play" where defendant sent a single letter threatening to pursue arbitration if insurance company did not pay claims, and only sending additional communications into the forum at the declaratory-judgment plaintiff's request); *cf. Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 528–29, 542 (5th Cir. 2019) (holding that letter sent to plaintiff "demanding payment" to cover damage incurred as the result of an explosion was "not enough to show minimum contacts with Texas"); *id.* at 542 n.18 (collecting cases).

But this policy cannot control the inquiry—it must be considered together with the other *Burger King* factors, consistent with the Supreme Court's "directive to 'consider a variety of interests' in assessing whether jurisdiction would be fair." *Jack Henry*, 910 F.3d at 1206 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017)); *Burger King*, 471 U.S. at 478–79 ("The Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests."). Indeed, we have repeatedly rejected the notion that the sending of a notice letter "can never provide specific jurisdiction." *Jack Henry*, 910 F.3d at 1203; *id.* at 1206; *Genetic Veterinary Scis., Inc. v. LABOKLIN, GmbH & Co.*, 933 F.3d 1302, 1312 (Fed. Cir. 2019); *Trimble*, 997 F.3d at 1156. So too have our sister circuits. *See, e.g.*, *Yahoo!*, 433 F.3d at 1208 ("This is not to say that a cease and desist letter can never be the

basis for personal jurisdiction."); *Def. Distributed v. Grewal*, 971 F.3d 485, 491, 496, 496 n.10 (5th Cir. 2020) (holding minimum contacts satisfied where the totality of contacts with the forum involved a cease-and-desist order focused on activities occurring in the forum).

In this case, the district court, not having the benefit of our recent decision in *Trimble*, erred by not considering the settlement-promoting policy underlying *Red Wing Shoe* as but one of many considerations in its overall analysis of the *Burger King* factors. *See Trimble*, 997 F.3d at 1157–59 (considering this policy alongside the other *Burger King* factors). Specifically, the district court erred in reading our precedent as creating a bright-line rule that communications directed to "the attempted resolution" of the parties' dispute regarding the patents-in-suit trumps all other considerations of fairness and reasonableness. Although some of our earlier precedent relying on *Red Wing Shoe* suggests that there is such a bright-line rule, *see, e.g.*, *Avocent*, 552 F.3d at 1340; *Breckenridge*, 444 F.3d at 1362; *Silent Drive*, 326 F.3d at 1206, Supreme Court precedent (both pre- and post-*Red Wing Shoe*) has made clear that jurisdictional inquiries cannot rest on such bright-line rules— there are no "talismanic jurisdictional formulas." *Burger King*, 471 U.S. at 485. Rather, "'the facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at 485–86 (alteration in original) (quoting *Kulko v. Superior Ct. of Cal.*, 436 U.S. 84, 92 (1978)); *Bristol-Myers Squibb*, 137 S. Ct. at 1780 ("In determining whether personal jurisdiction is present, a court must consider a variety of interests.").

## B

We now consider the "variety of interests" the Supreme Court has directed us to consider in assessing whether the exercise of jurisdiction would be unreasonable. Because we agree with the district court that minimum contacts are

satisfied, Zipit bears the burden to present a compelling case that jurisdiction would be unreasonable. We conclude that Zipit has not met this burden. The district court came to this same conclusion initially, but erroneously treated the settlement policy discussed above as controlling. In analyzing these factors de novo, we consider *Red Wing Shoe*'s settlement-promoting policy alongside each of the *Burger King* factors:

> [1] "the burden on the defendant," [2] "the forum State's interest in adjudicating the dispute," [3] "the plaintiff's interest in obtaining convenient and effective relief," [4] "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and [5] the "shared interest of the several States in furthering fundamental substantive social policies."

471 U.S. at 477 (quoting *World-Wide Volkswagen*, 444 U.S. at 292).

First, we consider the burden on Zipit of litigating in California, which is "always a primary concern." *World-Wide Volkswagen*, 444 U.S. at 292. Frank Greer, Zipit's President and CEO and one of the named inventors on the patents-in-suit, stated in his declaration in support of Zipit's motion to dismiss that all of Zipit's fourteen employees are located in South Carolina. These employees include another of the named inventors, Ralph Heredia, Zipit's Vice President of Business Development. There is no real dispute that both Mr. Greer and Mr. Heredia "have information relevant to the patents-in-suit" and the underlying litigation. J.A. 111 (Greer Decl. ¶ 8). Mr. Greer contends that it "would be significantly more burdensome for" both him and Mr. Heredia, "leaders of Zipit's management team, to litigate this case in California than in Zipit's home state of South Carolina due to the added expense of travel and time away from work." *Id.* ¶ 14.

We agree with the district court that "adjudication in California will create some burden for Zipit," given its ties to South Carolina. *Judgment Op.*, 2021 WL 533754, at *3. But in view of the limited evidence Zipit presented—only Mr. Greer's declaration with general allegations of inconvenience—we are not convinced that this would be so unreasonably burdensome as to be unconstitutional. It merely shows inconvenience to Zipit, a concern that can be addressed by challenging improper venue rather than arguing, as it does here, that the exercise of jurisdiction is unconstitutional. *See Burger King*, 471 U.S. at 477 (explaining that fairness considerations for litigating in a foreign forum "may be accommodated through means short of finding jurisdiction unconstitutional," such as "seek[ing] a change of venue"). Moreover, Zipit's evidence in support of hardship is a single sentence in Mr. Greer's declaration. We view this "general assertion of hardship, without supporting evidence"—beyond the single sentence—"as unpersuasive." *Breckenridge*, 444 F.3d at 1367.

Additionally, we note that "[r]epresentatives from [Zipit] traveled to California to meet with [Apple] in person to discuss [Zipit's] infringement contentions and licensing offer with respect to the patents-in-suit." *Xilinx*, 848 F.3d at 1357. As we explained in *Xilinx*, "territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there." *Id.* (quoting *Burger King*, 471 U.S. at 476). This "foreseeability . . . is critical to due process analysis." *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

Finally, Zipit suggests in its appeal brief that it could not have foreseen being haled into court in California because four years lapsed between its last contact with Apple in California (2016) and Apple's filing of its declaratory judgment action (2020). *See* Appellee's Br. 2–3, 25–26. But Zipit's argument skips over an important point—it is Zipit who reignited the parties' contacts by filing suit for patent

infringement in Georgia in 2020.  After moving to dismiss its action in Georgia without prejudice, Zipit cannot credibly assert that it could not have reasonably foreseen that Apple would respond in kind by filing a declaratory judgment claim, and that it would do so in its home state of California given Zipit's earlier contacts with the forum state.  However stale Zipit's contacts might have become absent intervening action by Zipit, they were ripe when Apple filed its declaratory judgment action.

Turning to the second factor—California's interest in adjudicating the underlying patent infringement dispute— we have previously recognized that California has "definite and well-defined interests in commerce and scientific development," and that it has "a substantial interest in protecting its residents from unwarranted claims of patent infringement." *Xilinx*, 848 F.3d at 1356 (first quoting *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 430 (Fed. Cir. 1996); and then quoting *Elecs. for Imaging*, 340 F.3d at 1352)); *accord Trimble*, 997 F.3d at 1158; *see McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (explaining that states have "a manifest interest in providing effective means of redress for [their] residents").  Zipit does not dispute that California has such an interest.  *See* Appellee's Br. 34.

The third factor asks us to consider Apple's interest in obtaining convenient and effective relief.  As the district court correctly explained, "Apple, 'which is headquartered in California, indisputably has an interest in protecting itself from patent infringement by obtaining relief from a nearby federal court in its home forum.'" *Judgment Op.*, 2021 WL 533754, at *4 (quoting *Xilinx*, 848 F.3d at 1356 (cleaned up)); *accord Trimble*, 997 F.3d at 1158.  We agree with the district court's assessment of this factor.

Fourth, we consider "the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *Burger King*, 471 U.S. at 477.  Underlying this

consideration is the settlement-promoting policy discussed above (and which the district court treated as dispositive). Indeed, as we explained in *Red Wing Shoe*, this important settlement-promoting policy "squarely invokes" the fourth *Burger King* factor. 148 F.3d at 1361; *cf. Yahoo!*, 433 F.3d at 1208.

Here, we have no doubt that Zipit's initial contacts with California can be fairly viewed as attempting to settle its dispute with Apple out of court, e.g., by way of a patent license. This is an important fact we consider and weigh in Zipit's favor. We note that Zipit's communications with Apple arguably went further, extending over the course of several years and reaching beyond license negotiations to include the sale of its patents. After Apple told Zipit it "d[id] not need a license to the" patents-in-suit in 2015, J.A. 146, Zipit continued to assert that Apple was infringing the patents-in-suit for many months thereafter. Overall, while we consider this important policy of promoting settlement—as it is, of course, one of the most efficient ways to resolve a controversy without court intervention—we must balance the fourth *Burger King* factor against the other factors.

Finally, regarding the fifth factor, Zipit has not argued that there is "any conflict between the interests of California and any other state." *Trimble*, 997 F.3d at 1159 (quoting *Xilinx*, 848 F.3d at 1356); *see also Judgment Op.*, 2021 WL 533754, at *4 ("Neither Apple nor Zipit have asserted any potential clash of substantive social policies between competing fora." (cleaned up)). Indeed, "the same body of federal patent law would govern the patent [noninfringement] claim irrespective of the forum." *Elecs. for Imaging*, 340 F.3d at 1352. Rather, it argues that the settlement-promoting policy underlies this factor as well because "social interests of society are advanced when disputes are settled out of court." Appellee's Br. 27–28. Assuming (without deciding) that Zipit is correct, our

conclusion as to the fourth *Burger King* factor would apply with equal force to the fifth.

Having considered each of these factors, we conclude that Zipit has not made a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. As we acknowledged above, there is of course some burden on Zipit to litigate in California. But California and Apple both have an interest in litigating this patent dispute in California. And while we agree with Zipit that the settlement-promoting policy is a relevant factor to consider in assessing the reasonableness of jurisdiction, for the reasons above, we cannot say on the facts of this case that California's and Apple's interest in litigating in California "pale[] in comparison to the interest of the judicial system and society at large." Appellee's Br. 34. Nor can we say that this policy, combined with Zipit's burden, would render the exercise of jurisdiction over Zipit compellingly and constitutionally unreasonable given the nature and extent of Zipit's contacts. Zipit went beyond attempting to resolve its dispute with Apple outside of court; it amplified its allegations of infringement after Apple stated it did not need a patent license, and Zipit, in the end, sued Apple for patent infringement.

Ultimately, this is not "one of the 'rare' situations in which sufficient minimum contacts exists but where the exercise of jurisdiction would be unreasonable." *Elecs. for Imaging*, 340 F.3d at 1352 (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994)). Zipit has not met its burden to present a compelling case that these factors in the aggregate would render the exercise of jurisdiction unreasonable.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we reverse the district court's judgment dismissing Apple's

complaint for declaratory judgment of noninfringement for lack of personal jurisdiction and remand for further proceedings.

**REVERSED AND REMANDED**